Dan **SLISZ**, Appellant (Defendant Below),

v.

**MUNZENREIDER CORPORATION and Greg Hunt, Appellees (Plaintiffs Below).**

No. 1–879A222.

Court of Appeals of Indiana, Fourth District.

Oct. 29, 1980.

Rehearing Denied Nov. 24, 1980.

---

Richard S. Harrison, Harrison & Erickson, Bloomington, for appellant.

Joseph D. O'Conner, III, Bunger, Harrell & Robertson, Bloomington, for appellees.

MILLER, Judge.

■ In the instant appeal defendant–appellant Slisz seeks to set aside the trial court's two–year injunction[1] from operating his Bloomington retail business in violation of a covenant not to compete which he signed in connection with a partnership agreement as the store manager for plaintiff–appellee Munzenreider Corporation. Munzenreider is also engaged in retail furniture sales in Bloomington. In light of the broad language utilized in the instant agreement–which purported in part to prohibit involvement in *any* city where Munzenreider operated a store, in any business *"similar or of a competitive nature to"* that carried on by the partnership–combined with the fact it does not appear Slisz possessed any trade secrets, customer lists, or other special or confidential information regarding Munzenreider's operation, we conclude this restrictive language is void, and that the trial court's injunction must accordingly be reversed.

We first consider the factual background of the case at bar, since it is evident the authorities involving covenants not to compete frequently turn on subtle, but significant, evidentiary distinctions which must be garnered by examining the facts and circumstances surrounding each case. *Captain & Co., Inc. v. Towne*, (1980) Ind.App., 404 N.E.2d 1159, 1161, *citing Frederick v. Professional Building Maintenance Industries, Inc.*, (1976) 168 Ind.App. 647, 344 N.E.2d 299.

The evidence reveals Slisz first became involved with Munzenreider Corp. as a part–time employee during the period when he worked as a high school teacher in Muncie. Slisz had previously graduated from Ball State University with a B. S. in physical education. Slisz testified he ultimately was forced to choose between the jobs, and at that time elected to work full–time with Munzenreider at its Muncie store, apparently under the supervision of one Hunt, mana-

ger of that store and vice–president of the national organization. Hunt testified Slisz worked approximately eight to nine months in Muncie, during which time Hunt trained him, in a manner facilitated by the corporation's national training program,[2] in how to run a retail furniture store, including instruction in "advertising, how to merchandise, different sales techniques, different suppliers that we do business with, how to set up financial contracts for the retail customers, how to do bookkeeping, take inventory, etc." Slisz did not have previous full–time experience in the furniture selling business.

Thereafter, Slisz was made a managing partner at the corporation's furniture store in Eagledale Shopping Plaza in Indianapolis, a position he held for only two months before being transferred to the store in Bloomington, then known as United Freight Sales (now called United Furniture Sales), which is central to the instant appeal. Slisz testified he acted as an assistant manager at United Freight Sales for one and one-half months, and was then made manager, a position he held for approximately five years until December 1978. The pleadings and evidence further disclose that on or about March 10, 1975 Slisz signed an agreement with Munzenreider providing that, as "managing partner" of United Freight Sales, Slisz would receive 100% of the first $7,800 in annual net profits of the store plus an additional percentage–beginning at 10% the second year, and increasing 10% each thereafter up to 50%–in return for management duties performed by Slisz. The agreement provided Slisz could terminate the relationship upon one month's notice, and that Munzenreider Corp. could also terminate his employment for various causes specified. It was further provided:

"11. The managing partner agrees that he will not at any time, directly or indirectly, divulge to any person, firm or corporation, or use himself, any informa-

1. Execution of the Monroe Superior Court's order, which by its terms extends for two years until December 31, 1980, was stayed pending this appeal.

2. Though the testimony in unclear, it does not appear Slisz himself was directly trained in any such national program by Munzenreider.

tion he has gained or that he may hereafter acquire during the term of the partnership relating to or regarding the nature of the partnership business, method of operation, its advertising techniques, its past, present or potential customers and any other matter of confidential or secret nature, and that he will at all times hold inviolate the knowledge of the operation of this partnership.

12. The managing partner agrees that in the event of the termination of the partnership for any reason whatsoever, he will not for a period of two (2) years from the date of such termination, then *engage in or accept employment from or* become affiliated with or connected with, directly or indirectly or become interested in, directly or indirectly, *in any way in any business* within the counties of Monroe, Brown, Morgan, Owen, Greene and Lawrence, IN, *similar or of a competitive nature to* the business carried on by the partnership, or *any other city* or place wherein the partners operate a store or within thirty (30) miles of said city where a store is maintained by the capital partners. The managing partner further agrees that he will not solicit from or approach in any manner for his own use or for the benefit of any future employer, the customers or suppliers of the present partnership." [3] [Emphasis Added.]

Slisz stated that while he was employed as manager at United Freight Sales, his duties included sales as well as book work, advertising, and other management tasks, and that he supervised two other employees. He indicated he did not have occasion to professionally travel to counties outside of Monroe County, although he did advertise a few times in Owen County, and regularly advertised in the Bloomington Sunday newspaper, which the evidence reveals is circulated in Bedford, located in Lawrence County. [4] The evidence further established that after the first several months of 1978, the store was moved to a new location, and that, according to the witness called by Munzenreider, the store has continuously lost money from the time of that move until trial. In December of 1978, Slisz was informed he would be replaced as manager at the Bloomington store, and was offered a job with the Corporation in South Dakota. This he declined, after which Slisz left his employment with Munzenreider and opened his own retail furniture business, at the same location previously occupied by United Freight Sales, on February 1, 1979. His business is called Warehouse Furniture Sales.

The instant litigation was commenced when Munzenreider Corporation and Hunt filed their complaint against Slisz requesting reasonable damages and that Slisz be enjoined from operating his own furniture business or working in another in violation of the agreement, because, it was alleged:

"9. ... [D]efendants is using schedules of prices, advertising materials, and other materials and knowledge that he gained from his relationship with the plaintiff pursuant to the partnership agreement in a way that is presently undercutting the plaintiff's business in Bloomington and surrounding areas.

10. That the defendant's pursuit of this business is in direct contravention of the reasonable provisions of the Partnership Agreement stated in Paragraph 11, 12 and 13. [5]

11. Because of [sic] the business of Warehouse Furniture Sales is of the identical kind as a business of the plaintiff, plaintiff has been damaged by this breach

---

3. Additionally, paragraph 15 provides for agreed damages for $1,000 per week for violation of certain prohibitions in the agreement, including paragraph 11.

4. In this context it is also significant to note Hunt testified the store generally serviced the area "within Bloomington and probably a *thirty mile radius* depending on where he's advertising," and that Slisz should have advertised and have had repair and service contacts with customers in that area (emphasis added). The evidence did not reveal whether such thirty mile radius would include the entirety of the named counties.

5. Paragraph 13, quoted *infra*, provides for damages and injunctive relief owing to irreparable damage caused by a breach of the agreement.

of the partnership agreement and will continue to be damaged because of the competitive nature of the two businesses."

Following a trial at which Slisz himself testified, along with Hunt and one Honchar, current manager of the Munzenreider's Bloomington store, the trial court determined in its "Discussion of the Law" it was reasonable for Munzenreider to contract against Slisz's acts, which it described as follows:

> "Plaintiff had a particular method of doing business: volume purchasing of low end furniture, competitive pricing, and newspaper advertising. The Defendant utilized his method in his own business. Additionally, the Defendant used an advertising format duplicative of the Plaintiff's and the Defendant operated his business at the exact location where the Plaintiff had developed a low end furniture sales market. These acts of direct competition are the very acts that the plaintiff sought to avoid through the covenant not to compete."

Accordingly, the court ordered Slisz enjoined "from operating a furniture business in violation of the no–competition clause," although its Discussion of Law also purported not to reach the question of the outer geographical limits of the covenant, since, "at a minimum, a restriction on competition in the Bloomington area is reasonable."

■ Consideration of Slisz's subsequent appeal must begin from the general proposition that restraints on competition between an employer and his former employee, similar to that in this case involving a "managing partner," are not favored by the law, but will nevertheless be enforced where 1) the restraint is reasonably necessary to protect the employer's business; 2) it is not unreasonably restrictive of the employee, and 3) the covenant is not antagonistic to the general public interest. *Waterfield Mortgage Co. Inc. v. O'Connor,* (1977) Ind.App., 361 N.E.2d 924. 54 Am. Jur.2d *Monopolies, Restraints of Trade and Unfair Trade Practices,* § 543 at 982 (1971).

In applying such test, many courts have held an employer must demonstrate some "special facts" giving his former employee a unique competitive advantage or ability to harm the employer before such employer is entitled to the protection of a noncompetition covenant, and those "special facts" may include (but are not limited to) such things as trade secrets known by the employee, the employee's "unique" services, confidential information (such as customer lists) known to him, or the existence of a confidential relationship. Annot., "Enforceability of Restrictive Covenant, Ancillary to Employment Contract, as Affected by Duration of Restriction," 41 A.L.R.2d § 13 at 69; 17 C.J.S. *Contracts* § 254 (1963). At the same time, the rule is generally stated that "[t]he mere fact that an employee has acquired skill and efficiency in the performance of the work as a result of his employment does not suffice to warrant the enforcement of a covenant on his part not to compete." 17 C.J.S. *Contracts* § 254 at 1141 (1963).

The same essential approach has been adopted by our Supreme Court in the leading case of *Donahue v. Permacel Tape Corp.,* (1955) 234 Ind. 398, 127 N.E.2d 235, where it was held an employee signing a restrictive covenant not to compete is entitled to utilize the general skills he has acquired in performing his job, and can only be prevented from doing so under circumstances where their use adverse to his employer would result in irreparable injury. As the Court stated:

> "As an incident to his business, the appellee (employer) was entitled to contract with regard to and thus to protect the good will of his business. Elements of this good will included 'secret or confidential information,' such as the names and addresses and requirements of customers and the advantage acquired through representative contact with the trade in the area of their application. These are property rights which the employer is entitled to protect. However, the same is not true regarding the skill and [sic] employee has acquired, or the general knowledge or information he has obtained which is not directly related to

the good will or value of employer's business. . . . An employee may contract to conditionally forego these personal attainments as a consideration for his employment *only* where their use adverse to his employer would result in irreparable injury to the employer."

234 Ind. at 410–11, 127 N.E.2d at 240. In that case, the Court ultimately found a covenant unenforceable because it would have prevented a tape sales representative from engaging in such profession throughout the United States and Canada, when his previous employment with the complaining employer (the nature of which was not precisely described) was limited to northern Indiana. The Court reasoned the "ordinary general" information to which he was privy, which did not include trade secrets but did involve lists of customers and their requirements, necessitated that "irreparable injury" could occur only in the area of his previous employment. Refusing to so limit by judicial construction the broad terms of the particular covenant at issue in that case, the Court in *Donahue* held the trial court's temporary restraining order must be dissolved.

■ As is suggested by the reasoning of *Donahue*, the cases in this area of the law weigh the employer's "protectable interest" in conjunction with other factors, including the geographical and time restraints of the particular covenant involved, to determine whether the covenant is reasonable and not in conflict with the public interest. *Frederick v. Professional Building Maintenance Industries, Inc., supra.* It is evident where the underlying protectible interest appears minimal, courts are apt to closely scrutinize the terms of the restraint. *See, e. g., Captain & Co., Inc. v. Towne, supra,* where the Court concluded, after observing that the former employee of an insurance clean–up and reconstruction business had obtained little more than general information, that the two–year restraint was "unreasonable in view of the nature of the protectible

interest." *Id.* at 404 N.E.2d at 1162. The Court noted the evidence did not show the former employee in that case had "stolen" any customers, nor were there any customer lists, since the nature of the business required firms to wait for customers to contact them, and that "[a]ny advantages, acquired through prior contact with insurance adjusters, were minimal because of the nature of the insurance claim business." *Id.* The trial court's denial of a preliminary injunction was correspondingly affirmed.

Similarly, the Court in *Frederick v. Professional Building Maintenance Industries, Inc., supra,* found significant the fact that the management trainee in a contract cleaning and maintenance business did not possess any novel or unique information amounting to a trade secret, although it was further observed he did learn "bidding and cost analysis information" which might be utilized in an effort to undercut bids to the employer's customers, and that the employee's job gave him "the advantage of personal acquaintance with the representatives of . . . [his employer's] customers in the area where he worked." *Id.* 168 Ind. App. at 649, 344 N.E.2d at 301. Utilizing the reasoning in *Donahue,* the Court in *Frederick* determined, however, that the particular covenant applied against the management trainee, which covered eight counties, was overly broad, since there was no evidence he had worked for his employer in its contract maintenance business in each of those eight counties. Thus, the employer had failed to meet "the burden of proving the facts and circumstances that may justify relief," an evidentiary showing which in these cases necessarily "rests with the party seeking to enforce the covenant." *Id.* at 648; 344 N.E.2d at 301. Although it was additionally argued that the covenant should in any event be read narrowly, the opinion in *Frederick* observed that "the courts may not enforce a reasonable restriction under the guise of interpretation," [6] *id.* at 648–49; 344 N.E.2d at 301, although it reiterated the general rule that "the ulti-

6. It was also suggested in *Frederick* that the various cases purporting to sever covenants not to compete so as to make them reasonable should be "restricted to the facts there appearing." *Id.* at 649 n.1; 344 N.E.2d at 301 n.1.

mate determination of whether the covenant is reasonable is a question of law for the courts." *Id.* at 648; 344 N.E.2d at 301.

Returning to the facts of the instant case, there was undisputed testimony that Slisz in the operation of his new store, sold the "same type of merchandise" dealt with by the Munzenreider store, namely, "low end" (low price) retail furniture, although Slisz also stated he does not deal (with one exception) with the exact same brand name goods. Further, there was evidence from Hunt that Slisz employed the same type of advertisements–including an allegedly "unique" system of classified advertising[7] –used at the Munzenreider store, and that Slisz was thereby utilizing the training he had earlier received from Munzenreider. When asked what Slisz may have learned which he would not have learned at any other furniture store in the community, Hunt further replied "[i]t's probably our volume purchasing and our lower prices," though he admitted "I'm assuming that that's relatively easy to figure out." Hunt also indicated Slisz was an unusually harmful competitor, thus generating a "protectible interest" in favor of Munzenreider:

"Because he knows the products that we sell, where we get them or the type, you know, manufactures that make that and he learned that stuff from working for Munzenreider, for going, from buying from different representatives that came around."

Hoschar, the current manager of the Munzenreider store in Bloomington, known as United Furniture Sales, stated there had been some "confusion" among his customers concerning the two different stores (the Munzenreider store and the one operated by Slisz) because "he was in that operation at that location exactly where he's at right now," and that people responding to Mun-

zenreider newspaper ads may go to Slisz's store because they only "will catch a glimpse of where it is on sale." He admitted, however, that he supposed the same problem could arise if any retail furniture dealer took over the old location. Munzenreider also submitted two exhibits, showing that what appears to be the same drawing for a dinette set appearing in ads from the competing stores, with an advertised price of $179.99 in each case.[8] Hoschar further stated that each of the several items appearing in the ad run by Slisz were also items carried in the Munzenreider store. The evidence does not reveal whether the ads appeared at the same time, although Hoschar testified that in one Sunday newspaper, Slisz ran a one–half page ad undercutting by $30–$40 the prices in the Munzenreider ad on the reverse side of the "classified" ad page. Also introduced, as defendant's exhibits 1 and 2, were newspaper ads from a third Bloomington competitor (Colonial Furniture)[9] with respect to which Hoschar testified as follows:

"Q  . . . Can you then distinguish for me if you would please how those advertisements are different from your own?

A  Well you, you can't vary an advertisement to a source. It's got the basic ingredients in every ad.

.    .    .    .    .

Q  . . . How is it going to be different?

A  Any, . . . certain unique little object that you can place in an ad to draw attention to people to look at the ad is going to be an advantage to you. Anybody, you know, you could change the name on this and I couldn't tell you who it was from if you wanted to do that. . . .".

---

7. The evidence did not reveal the exact nature of such advertising–for example, it was not indicated precisely where in the classified advertising sections such ads were placed–nor did the evidence disclose that Slisz's ads were identical in content to those used by Munzenreider.

8. Exhibit "A" also includes what are apparently three classified ads used by Slisz at his new

store. There do not appear to be corresponding ads from the Munzenreider operation.

9. We note such ads showed a photograph of a dinette set (which, like that advertised by Slisz and Munzenreider, was available with one leaf and four chairs) selling for either $297.50 or $197.50, depending on how many chairs and leaves were purchased.

There was no evidence that Slisz intentionally solicited customers away from the Munzenreider store, and he testified he did not engage in such solicitation. Slisz further stated that the manufacturer's representatives who had called on him as manager of the Munzenreider store continued to call on him at his own business, but that he bought only one specific brand which was the same, comprising at most 10% of his inventory.

In response to Munzenreider's argument that such evidence satisfies its burden of showing a protectible interest requiring the reasonable restraints of a covenant not to compete, we first look to the language of the covenant itself, since it is only by looking at the "interrelation" of the "proscribed activity" in connection with the particular time constraint and the nature of the "protectible interest" that a court on appeal may decide the outcome in a given case. *Frederick v. Professional Building Maintenance Industries, Inc., supra.*

Although the terms of the covenant are somewhat ambiguous, it appears that the language of paragraph 12 of the parties' agreement on its face prohibits Slisz from becoming involved not only with any business in any city which is of a "competitive nature" with a local Munzenreider store, but in addition prohibits him from becoming connected with any "similar" operation, apparently without regard to whether such similar business actually competes with Munzenreider or is even of a "competitive nature." The agreement does not purport to define what kind of business may be "similar" to the partnership operation. We note, however, in this context that the general definition of that word includes broad concepts such as "having characteristics in common," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2020

(1976). Thus an employee such as Slisz may be forced to speculate whether such language prohibits, for example, the operation of a retail outlet for expensive, "high end" furniture even though the new store does not compete with a "low end" Munzenreider operation.[10] Moreover, as noted above, the terms of such covenant prohibiting connection with "similar" businesses encompass not only the City of Bloomington and Monroe County and various counties adjoining it, but indeed every city (and a 30–mile radius around it) in which Munzenreider operates a store, apparently without regard to whether such city is in Monroe County, the State of Indiana, or even the entire United States. It seems evident, as our courts have held, that so geographically broad a covenant may be reasonable only in very unusual circumstances, such as where "trade secrets" are involved. *See Donahue v. Permacel Tape Corp., supra,* in which a covenant extending throughout the United States and Canada was held to be too broad in the absence of trade secrets or similar information. Where such a covenant prohibits, in addition, a connection with any business which is similar *or* competitive, we believe the agreement may be void on its face.

While we might thus conclude, as is acknowledged by the Court in *Frederick v. Professional Building Maintenance Industries, Inc., supra,* that "the breadth of a single restriction may appear to dominate the outcome," *id.* at 650; 344 N.E.2d at 302, we nevertheless proceed to consider, as in that case, the nature of the particular "protectible interest" shown, in part because Munzenreider has alleged in its complaint that Slisz has utilized confidential or secret "materials and knowledge" in violation of paragraph 11, *supra,* as well as paragraph

---

**10.** With regard to interpreting this use of the word "similar," we observe Munzenreider did not present evidence revealing precisely what kinds of furniture it sold at its Bloomington store, although we are aware from the exhibits such furniture included dinette sets, living room sets, rockers and mattresses. Arguably at least, the reference to "similar" businesses would include any department store (including discount stores) with a furniture department, as well as business and specialty furniture stores, and perhaps any establishment selling appliances such as televisions, or even other "low end" discount businesses which do not sell furniture.

12, of the parties' agreement.[11] Such allegations, if proved, may arguably demonstrate the existence of a trade secret or similar confidential information permitting a somewhat broader restriction than may otherwise be allowed. *Donahue v. Permacel Tape Corp., supra.*

It appears, however, that in the instant case there was no evidence to support the allegations by Munzenreider that Slisz utilized, or even had access to, any confidential or secret information, or that the particular employment of Slisz otherwise created a "protectible interest" in Munzenreider so as to reasonably warrant the covenant in question, or any covenant not to compete.

In this context, Munzenreider cites *Welcome Wagon, Inc. v. Haschert*, (1955) 125 Ind.App. 503, 127 N.E.2d 103, which held there was a protectible interest in the employer (Welcome Wagon) where its hostess, a woman of high reputation with a "personal following" and "extensive acquaintance" in her community, learned the novel and unique business methods of Welcome Wagon and then quit to establish her own similar operation in the same city (Kokomo), using some of the same "sponsors." The special business methods included a national training program in New York to which the employee was sent, where she was instructed in Welcome Wagon's method of calling on brides, newlyweds and newcomers to the community and presenting them with certificates from the Mayor and the Chamber of Commerce and other organizations, along with gift certificates from sponsoring businesses. The sponsors in return paid a commission. The Court held enforceable a covenant prohibiting her from engaging in

such operations on her own in the city of Kokomo,[12] stating as follows:

> "The fact that the injury done by the breach of a restrictive covenant in a contract of employment cannot be measured in dollars and cents and compensated though an action at law, is a prime reason for enjoining its continuing breach. In our opinion irreparable injury need not be shown where, as here, the services of the employee have been of such character that she gained knowledge of her employer's *special and particular business methods* and the very purpose of the breach is to capitalize upon the use of such methods for her own benefit.

. . . . .

> We see nothing unreasonable in contracting against the appellee's engaging in a business the same or similar to that of the appellant for a period of five years within the corporate limits of the city of Kokomo where her personal acquaintance and following is substantial. (Emphasis Added.)"

Id. at 507, 127 N.E.2d at 106. The Court accordingly reversed the trial court's denial of an injunction on the grounds such denial was contrary to law.

In contrast to the facts in *Welcome Wagon*, in the leading case of *Club Aluminum Co. v. Young*, (1928) 263 Mass. 223, 160 N.E. 804, the Massachusetts Court found a covenant unenforceable where it prevented salesmen of aluminum ware from working for a competitor after being instructed in the business methods originated by the plaintiff, since in that case the allegedly "unique" methods were held not to create a

---

11. As earlier observed herein, Munzenreider alleged Slisz "is using schedules of prices, advertising materials, and other materials and knowledge that he gained from his relationship with the plaintiff . . ." in violation of the various covenants against competition. The trial court held he was enjoined from operating his business in violation of "the no–competition clause of the parties' agreement," and that he is further enjoined from divulging "any information he has gained from his employment from the Plaintiff regarding the nature of the business, mode of operation, advertising techniques, past and potential customers or any

other matter secret or confidential nature of the Plaintiff."

12. Although the covenant by its terms included the entire United States, the provision involving such broad geographical scope was found to be severable from language restricting the covenant to Kokomo, in light of numerals and the words "and/or" used to separate the terms of the covenant. Compare *Frederick v. Professional Building Maintenance Industries, Inc., supra*, where the various counties of the overbroad restriction were simply listed.

protectible interest. Such methods, involving "specialized" training of the salesmen, consisted of inducing a housewife to gather her friends together for a cooking demonstration, after which the salesmen individually called on each of the assembled homemakers. But the Court, in noting such practices were "openly employed by the plaintiff and at least three of its competitors," and after observing that there was only a general averment of "specialized" training and that the employee in question was made privy to no special secrets, concluded in essence that the employees had gained no unfair competitive advantage against their former employer requiring a restrictive covenant, and that "[i]t is difficult to conceive of any ordinary employment which could not be cleverly clothed in broad language as special and peculiar as that employed in the contract here in issue." *Id.* at 228; 160 N.E. at 806. *See also Reed, Roberts Associates, Inc. v. Strauman,* (1976) 40 N.Y.2d 303, 386 N.Y.S.2d 677, 353 N.E.2d 590, where the Court held an auditor employed by a tax advising firm possessed no unique skills nor any confidential information, where the names and addresses of potential customers are readily available through public sources.

■ We believe that in light of the evidence presented, the situation in the instant case more closely resembles that in *Club Aluminum,* in contrast to the unusual facts of the Welcome Wagon case, since the evidence in the case at bar does not suggest Slisz possessed a particular following or unique skills such as were involved in *Welcome Wagon,* nor had he received information regarding trade secrets, customer lists or other confidential matters. Thus, while it was alleged Slisz received specialized training, including instruction in "unique" methods of classified advertising, such assertions were unsupported by specific evidence in the record, even assuming *arguendo* that such practices as advertising in the

classified section of the newspaper would not be (as Hunt admitted in the case of Munzenreider's alleged volume purchasing and lower prices) "relatively easy to figure out." Like the Court in *Club Aluminum,* which sustained the defendants' demurrer to the plaintiff employer's cause of action, we believe unsubstantiated claims of "'[h]ighly specialized training and personal supervision in connection with the sales of ordinary merchandise well known in the market, alleged to have been given by the plaintiff to all its salesmen, are statements too general in nature to constitute ground for legal relief." *Club Aluminum Co. v. Young, supra,* 263 Mass. at 227, 160 N.E. at 806. Otherwise, there would remain nothing but a "shadow" of "the general rule against the validity of restrictive covenants upon individual liberty of action as to one's trade or calling...." *Id.* at 228, 160 N.E. at 806. Nor do we believe the mere fact that Slisz knows the products sold by Munzenreider and their suppliers creates any protectible interest in Munzenreider, in light of the essentially uncontroverted evidence that such products were generally available to any furniture retailer by virtue of suppliers' representatives who call on the retailers.[13] *See generally Reed, Roberts Associates, Inc. v. Strauman, supra.* We note in this context that although Hunt testified Slisz was advertising "every *basic* product that we have at a lower price," Slisz further stated he sold only one of the particular brand names sold by Munzenreider, and that such products comprised at most 10% of his inventory. There was no evidence clarifying Munzenreider's allegation in its complaint that Slisz is using a "schedule of prices" gained from his employment relationship.

The circumstances of the instant case may similarly be seen as outside the language in *Donahue v. Permacel Tape Corp., supra,* in which it is suggested there may be an irreparable injury to "good will" deserv-

---

**13.** Although Hunt testified Slisz would not have known "*exact* suppliers" utilized by Munzenreider had he not worked for that corporation, he failed to specify the precise significance of such fact. We note he additionally testified, with respect to such representatives, that it was "possible" they might not visit a particular business because "they might not be interested in the account or they have another account that they're protecting."

ing protection in the geographical area serviced by a sales representative. The Court in that case noted that such sales representative was made aware of *customer lists and requirements*, knowledge which the Court elsewhere in the opinion described, as noted earlier in this opinion, as "secret or confidential information" constituting "property rights which the employer is entitled to protect." Id. 234 Ind. at 410–11; 127 N.E.2d at 240. It does not appear any similar evidence involving possible harm to "good will" was presented in the instant case. Indeed, although Hoschar testified he believed Slisz *may* benefit from "confused customers" responding to Munzenreider ads by going to Slisz's store at the former Munzenreider location, he also acknowledged, as noted above, such problem could arise "if anybody was at that store." There was no showing that Slisz was actively soliciting Munzenreider customers by, for example, advertising his former association with that corporation's business. *Compare* the facts of *Samuel Stores, Inc. v. Abrams*, (1919) 94 Conn. 248, 108 A. 541, where the Court, in observing that a clothing store manager could reasonably be prohibited from soliciting the trade of a branch store where he worked, could not be enjoined from opening his own store in the same city under a covenant purporting to extend to *any* city in which the employer had a clothing business.

It follows from this discussion that Munzenreider failed to present any evidence of "secret" or "confidential" information utilized by Slisz in violation of paragraph 11 of the parties' partnership agreement, nor was there a showing of any interest involving "good will" or other protectible matter warranting the protections of paragraph 12 of that agreement, which purports to prohibit Slisz from becoming associated with any "similar" operation in a broad geographical area. In short, it appears the agreement in question "relates merely to services in a local retail business, and primarily aims to restrict competition," *Samuel Stores, Inc. v. Abrams, supra* at 254, 108 A. at 543, by preventing Slisz from using the general skills he has acquired during his employment in the subsequent operation of any "similar" business in a broad geographical area. Under the circumstances of this case, we hold such a covenant to be unreasonable and thus unenforceable.[14] Indeed, even assuming (as the trial court apparently did) *arguendo* that the geographical restraint of the covenant in question could be narrowed through judicial construction in disregard of the principle expressed in *Frederick v. Professional Building Maintenance Industries, Inc., supra*, it nevertheless appears such a covenant would unduly restrict the rights of a former employee where there has been no showing of confidential information, customer lists, or even the advantage of close customer contact with a "pool" of Munzenreider patrons such as that involved in the salesmen route cases and suggested by the opinion in *Donahue v. Permacel Tape Corp., supra*. Absent an appropriate factual showing -not made in the instant case–supporting the allegations of a protectible interest in the employer, such a covenant is void as against public policy.

▇ Munzenreider contends, in response to such conclusion, that this Court on appeal cannot disturb the trial court's determination, in its "Discussion of the Law," that Munzenreider utilized a "particular method of doing business" entitling it to the protections of the covenant not to compete. We agree that an appellate court is not empowered to "reweigh" the evidence properly heard in the trial court. We also observe, however, that it *is* the function of a reviewing court in these cases to determine whether, in light of the evidence which was

---

14. Although Munzenreider also contends the instant action involving Slisz as a "managing partner" is in some sense distinguishable from various employer–employee cases supporting our decision herein, he presents no cogent argument (nor can we envision any) why a different result is required. Of course, the reasoning of this opinion does recognize, as observed in *Donahue v. Permacel Tape Corp., supra*, that cases involving the sale of a business or profession present a somewhat different line of authority in the area of covenants not to compete, and the reasoning of this opinion is not designed to address those cases.

presented, a covenant is reasonable and thus enforceable as a matter of law, a question which necessarily involves consideration of the showing of allegedly legitimate interests (if any) of the covenantee which might be protected. *Raymundo v. Hammond Clinic Association,* (1980) Ind.App., 405 N.E.2d 65, 68, *citing Frederick v. Professional Building Maintenance Industries, Inc., supra*; and *Waterfield Mortgage Co., Inc. v. O'Connor, supra,* where the Court stated "[r]easonableness of the covenant being a question of law, its resolution must invariably rest on adequate facts." *Id.,* 361 N.E.2d at 926.

■   Munzenreider also presents the final, additional argument that Slisz is "estopped" from challenging the validity of the covenant not to compete because he has accepted various benefits flowing from the parties' partnership agreement containing such covenant.  We observe, in response to such argument, that our Supreme Court has stated in *Donahue v. Permacel Tape Corp., supra,* that "[a]n employee may contract to conditionally forego … personal attainments as a consideration for his employment *only* where their use adverse to his employer would result in irreparable injury to the employer," *id.* 234 Ind. at 411, 127 N.E.2d at 240 (emphasis in original),[15] a conclusion which we take to mean there is a general public interest supporting an employee's use of his acquired skills in cases such as the one at bar.  Moreover, in light of the various services rendered to Munzenreider by Slisz as a managing partner, we cannot assume in contrast to the claim of Munzenreider, that "the language of paragraph 13 [of the partnership agreement] demonstrates that the *major* consideration flowing to the appellee [Munzenreider] from the appellant [Slisz] is the restrictive covenant, …. "  That paragraph provides:

"13.  The partners hereto recognizing that irreparable injury will result to the capital partner, its business and property in the event of a breach of this agreement, particularly in regards to paragraphs 11 and 12 [quoted *supra*], and this partnership is based primarily upon this agreement, it is therefore agreed in the event of a breach a capital partner shall be entitled, in addition to any other remedies available, to an injunction to restrain the violation thereof by the managing partner, his agents, servants, employers and employees and all persons acting for or with him."

Despite such language, we cannot conclude that any of Slisz's acts in accepting the benefits of a managing partner should estop him from attacking the injunction sought in the instant case.  As noted in *Donahue, supra,* "the rule is firmly established, with reason, that in determining the validity of a negative covenant in restraint of competition that such contracts are to be strictly construed against the covenantee, and the test of their validity is dependent not merely upon the covenant itself but upon the entire contract and the situation to which it is related."  Id. at 404, 127 N.E. at 237.

Accordingly, we reverse.

YOUNG, P. J., and CHIPMAN, J., concur.

---

15.  As discussed earlier in this opinion, the Court in *Donahue* determined the only "confidential information" in that case related to "sales methods, lists of customers, customer requirements, etc., *in the area worked*," *id.* at 405, 127 N.E.2d at 240 (emphasis in original) and ultimately determined there was no evidence of any other confidential or secret information the competitive use of which could result in irreparable injury outside the area of the sales representative's actual employment.  Thus, a broad covenant encompassing the United States and Canada was held to be unenforceable.