**AMERICAN SHIPPERS SUPPLY COMPANY, Plaintiff-Appellant,**

v.

**James CAMPBELL, Glenn Campbell, Bert Fazli and Indy Office and Shipping Supplies, Inc., Defendants-Appellees.**

No. 2-883A274.

Court of Appeals of Indiana, Second District.

Dec. 7, 1983.

Rehearing Denied Jan. 20, 1984.

Jerry Williams, John E. Taylor, Williams & Shoup, Indianapolis, for plaintiff-appellant.

Thomas Michael Quinn, Jr., John M. Moses, Clark, Clark, Pappas & Quinn, Timothy E. Hollingsworth, Indianapolis, for defendants-appellees.

ROBERTSON, Presiding Judge (Writing by Designation).

American Shippers Supply Co. (American Shippers) appeals the trial court's denial of its complaint for a preliminary and permanent injunction as well as money damages against two former employees, James and Glenn Campbell (Campbells). American Shippers alleges the trial court erred by not enforcing its covenant not to compete executed by the Campbells.

We affirm.

American Shippers is an Ohio corporation authorized to do business in Indiana. It has Ohio sales offices in Cincinnati, Columbus, and Dayton. Its only office in Indiana is located in Indianapolis. American Shippers engages in the sale of shipping room supplies and equipment. The business is highly competitive with approximately ten to twenty competitors in the Indianapolis market. The articles which it sells are not unique and approximately 90% of its business consists of repeat orders from established customers.

James Campbell began working for American Shippers in February, 1977, in the Cincinnati office as a tape specialist. Glenn Campbell also began working for it in 1977. On December 22, 1977, the Campbells executed ten year employment contracts with American Shippers which contained the following paragraphs:

(IX) NONDISCLOSURE OF INFORMATION CONCERNING BUSINESS

(a) Employee further specifically agrees that he will not at any time, in any fashion, form or manner, either directly or indirectly, divulge disclose or communicate to any person, firm or corporation in any manner whatsoever any information of any kind, nature or description concerning any matters affecting or relating to the business of Employer, including, without limiting the generality of the foregoing, the namrs [sic] of any of its customers, the prices it obtains or has obtained or at which it sells or has sold its products, or any other information of, about, ot [sic] concerning the business of Employer, its manner of operation, its

plans, processes, or other date of any kind, nature, or description without regard to whether any or all of the foregoing matters would be deemed confidential, material or important, material and confidential and gravely affect the effective and successful conduct of the business of the Employer, and its goodwill, and that any breach of the terms of this paragraph is a material breach hereof. (b) Employee agrees that he will not for a period of one (1) year after the termination of his employment by Employer with cause, or one (1) year after his own termination of his employment, and within the radius of sixty (60) miles of where Employee's had his place of business or center of operation in Indianapolis, Indiana, compete with said Employer in any fashion, form or manner, either directly or indirectly, including, without limiting the generality of the foregoing; selling of packaging and shipping supplies and equipment or act as principal, agent, employee, employer, stockholder, co-partner or in any other individual representative capacity, or engage in a like business, or solicit, serve, or cater to, or engage, assist, be interested in, or connected with any other person, firm or corporation so engaging with, or soliciting the customers served by him or any other employee of American Shippers Supply Company, or any of its branches, during his employment with the company. Any breach of the terms of this paragraph is a material breach hereof.

The Campbells were paid a base salary in addition to commissions with their sales. American Shippers opened its Indianapolis office in 1977 and the Campbells were transferred to it. The Campbells were responsible for soliciting sales for shipping room supplies and equipment throughout Indiana.

The Campbells offered to buy the Indianapolis operations of American Shippers in either October or November, 1982, but their offer was rejected. The Campbells mailed their resignations to American Shippers's headquarters in Cincinnati on April 1, 1983. The Campbells proposed April 15 as the date of their resignation. They met with Bruce Hummel, the president of American Shippers, on April 6, 1983, and he accepted their resignations effective on that date. Since April 6, 1983, the Campbells have been employed by Indy Office and Shipping Supplies, Inc., a competitor of American Shippers.

American Shippers offered proof that the Campbells may have misappropriated information contained on customer file cards. It also introduced evidence establishing the Campbells had contacted former customers of American Shippers indicating that they were now employed by Indy Office and were willing to serve them.

The trial court concluded that the names and addresses of American Shippers's customers could have been found in the telephone book, but the customer contact was not listed there. It also found that American Shippers had approximately 1350 customers during the time in question. The trial court reasoned that in determining whether a restraining order is necessary to protect an employer's business, it first must be found that the employer has a legitimate interest to protect. It concluded that American Shippers failed to prove that its customers' lists had attained the status of trade secrets or confidential information. The trial court also held that American Shippers failed to establish any special facts that gave the Campbells any competitive advantage, and therefore, denied American Shippers's request for an injunction.

■ American Shippers raises six issues • upon appeal which have been consolidated into two issues pursuant to Ind.Rules of Procedure, Appellate Rule 8.3(A)(7). It argues that the trial court erred in concluding that it did not have a legitimate interest to protect by the covenants not to compete with the Campbells. American Shippers also argues that the covenants not to compete were reasonable.

It must be noted that American Shippers is appealing from a negative judgment. In reviewing a negative finding against the plaintiff, the judgment may be set aside

only if the evidence is uncontroverted and will support no reasonable inference in favor of the finding. *Chaney v. Tingley,* (1977) 174 Ind.App. 191, 366 N.E.2d 707. It is with this standard that we analyze the law regarding covenants not to compete.

Covenants not to compete are in restraint of trade and are not favored by the law. They will be enforced only if they are reasonable with respect to the covenantee, the covenantor, and the public interests. The determination of reasonableness is made upon the basis of the facts and circumstances of each case. *Licocci v. Cardinal Associates, Inc.,* (1983) Ind., 445 N.E.2d 556. In *Slisz v. Munzenreider Corp.,* (1980) Ind.App., 411 N.E.2d 700, the following analysis of the reasonableness test was offered:

.. An employer must demonstrate some 'special facts' giving his former employee a unique competitive advantage or ability to harm the employer before such employer is entitled to the protection of a non-competition covenant, and those special facts may include (but are not limited to) such things as trade secrets known by the employee, the employee's 'unique' services, confidential information (such as customer lists) known to him, or the existence of a confidential relationship. At the same time, the rule is generally stated that 'the mere fact that an employee has acquired skill and efficiency in the performance of the work as a result of his employment does not suffice to warrant the enforcement of a covenant on his part not to compete.'

(Citations omitted).

411 N.E.2d at 704.

*Donahue v. Permacel Tape Corporation,* (1955) 234 Ind. 398, 127 N.E.2d 235 is the leading Indiana case on covenants not to compete. There, an employee acquired confidential information in the geographic area in which he worked as well as expertise in sales of a particular product. The supreme court examined the conflicting interests in an employer protecting trade secrets and confidential information with an employee's attainment of skills and knowledge, and stated:

As an incident to his business, the appellee (employer) was entitled to contract with regard to and thus to protect the good will of his business. Elements of this good will included 'secret or confidential information', such as the names and addresses and requirements of customers and the advantage acquired through representative contact with the trade in the area of their application. These are property rights which the employer is entitled to protect. However, the same is not true regarding the skill an employee has acquired, or the general knowledge or information he has obtained which is not directly related to the good will or value of employer's business. Knowledge, skill and information (except trade secrets and confidential information) become a part of the employee's personal equipment. They belong to him as an individual for the transaction of any business in which he may engage, just the same as any part of the skill, knowledge, information or education that was received by him before entering the employment. Therefore, on terminating his employment he has a right to take them with him. These things cannot be taken from him, although he may forget them or abandon them. *Jewel Tea Co. v. Grissom* (1938), 66 S.D. 146, 279 N.W. 544. An employee may contract to conditionally forego these personal attainments as a consideration for his employment *only* —where their use adverse to his employer would result in irreparable injury to the employer.

234 Ind. at 410, 411, 127 N.E.2d 235.

American Shippers argues the trial court erred in concluding that it failed to prove its customer lists had attained the status of trade secrets or confidential information. It also challenges the trial court's conclusions that American Shippers did not have a legitimate interest to protect and that it failed to establish any special facts which gave the Campbells any competitive advantage. American Shippers asserts that a customer list constitutes confidential infor-

mation pursuant to the holdings of *Donahue v. Permacel Tape Corporation, supra; Licocci v. Cardinal Associates, Inc., supra,* and *Slisz v. Munzenreider Corporation, supra.* Moreover, American Shippers points out that the Campbells clearly violated the covenants by photocopying a portion of its customer card file and by soliciting some of its former clients at a trade show.

While American Shippers correctly asserts that an employer may protect its customer lists, we remain unpersuaded that the trial court's judgment is clearly erroneous in light of the evidence presented. The trial court found the customer list could have been easily obtained through the use of a telephone directory or a trade publication, but the customer contact could not be obtained by those means. American Shippers argues the customer contact is confidential information and constitutes its goodwill. The evidence showed that the customer file cards, which contained the customer contact, were available to all American Shippers's employees and were not regarded as confidential. There was no testimony showing the customers relied upon the Campbells' particular expertise or knowledge. There was no evidence presented regarding any personal relationship between the Campbells and American Shippers's customers. Although American Shippers demonstrated that approximately ninety percent of its business came from repeat orders of customers, it defined a customer as anyone who had purchased in excess of ten dollars of its products on credit. There was evidence establishing that customers were more concerned with obtaining a product rather than from whom they purchased the product. In *Licocci v. Cardinal Associates, Inc.,* the supreme court stated:

> Although Cardinal Associates may have considered its customer lists confidential, no evidence indicated these lists could have been used to undercut competition or could not easily have been duplicated by alternate means, such as a telephone canvass of the market area. Neither was there evidence the information given salesmen was novel or unique to Cardinal

Associates so as to constitute a protectible trade secret.

445 N.E.2d 561.

Furthermore, there was evidence presented that indicated that any loss of goodwill suffered by American Shippers resulted from its credit problems with suppliers who refused to do business with American Shippers. This inability to obtain supplies also caused American Shippers to lose customers.

American Shippers argues this case is similar to *Miller v. Frankfort Bottle Gas, Inc.,* (1964) 136 Ind.App. 456, 202 N.E.2d 395, in which an employee was bound to the covenant not to compete in the sale of a nondistinguishable product because of the employer's business depended primarily on its service. The case is distinguishable because it was established that the salesman had a personal relationship with the customers, that customers had stopped dealing with the employer as a result, and that such a loss of customers was rare in that industry. We believe the situation is more analogous to the language of *Slisz v. Munzenreider Corp., supra,* which provides:

> we believe unsubstantiated claims of '[h]ighly specialized training and personal supervision in connection with the sales of ordinary merchandise well known in the market, alleged to have been given by the plaintiff to all its salesmen, are statements too general in nature to constitute ground for legal relief.' *Club Aluminum Co. v. Young, supra,* 263 Mass. [223] at 227, 160 N.E. [804] at 806. Otherwise, there would remain nothing but a 'shadow' of 'the general rule against the validity of restrictive covenants upon individual liberty of action as to one's trade or calling . . . .' *Id.* at 228, 160 N.E. at 806. Nor do we believe the mere fact that Slisz knows the products sold by Munzenreider and their suppliers creates any protectible interest in Munzenreider, in light of the essentially uncontroverted evidence that such products were generally available to any furniture retailer by vir-

tue of suppliers' representatives who call on the retailers. (Footnote omitted). 411 N.E.2d 709.

In conclusion, this case does not hold that an employer's customer list does not constitute a confidential information subject to protection, but rather that the employer must demonstrate a protectible interest in the customer list where the items are not novel or unique. In light of the evidence presented and the standard of review regarding negative judgments, we cannot conclude the trial court's judgment is clearly erroneous. Due to this finding, we need not examine the reasonableness of the covenant.

The judgment is affirmed.

BUCHANAN, C.J., and SHIELDS, J., concur.