James McGLOTHEN, Appellant–
Defendant,

v.

HERITAGE ENVIRONMENTAL
SERVICES, L.L.C., Appellee–
Plaintiff.

No. 45A04–9807–CV–371.

Court of Appeals of Indiana.

Feb. 18, 1999.

Kirk A. Pinkerton, Jeffrey F. Gunning, Pinkerton and Friedman Professional Corporation, Munster, Indiana, Attorneys for Appellant.

Paul J. Peralta, D. Lucetta Pope, Baker & Daniels South Bend, Indiana, Attorneys for Appellee.

## OPINION

KIRSCH, Judge

James McGlothen appeals from the trial court's grant of a preliminary injunction to enforce the terms of his covenant not to compete with his former employer, Heritage Environmental Services, L.L.C. (Heritage). On appeal, he raises several issues for review, which we restate as follows:

I.  Whether Heritage has a legally protectable interest in its trade information or goodwill.

II. Whether the trial court erred in finding that the standards for granting a preliminary injunction had been met.

We affirm.

## FACTS AND PROCEDURAL HISTORY

From August 19, 1992 to March 6, 1998, McGlothen worked for Heritage, an industrial waste management company. Upon his employment with Heritage, McGlothen

signed a Confidentiality Agreement and Covenant Not to Compete, which reads in part:

"2. Employee also agrees that he will not in any way directly or indirectly, at any time while he is in the employ of Employer, or within twelve (12) months after either voluntarily or involuntarily leaving or terminating said employment, for himself or any other person, firm or corporation, call upon or solicit orders or work from any person, firms or corporations who shall be customers of Employer; nor will Employee in any way, directly or indirectly, solicit, divert, or take away any customers of Employer within such time. Employee further agrees that he will not at any time during the term of this contract, or within twelve (12) months after leaving or termination of said services with Employer, for himself or any other person, firm, or corporation, engage in the business of industrial waste management or any other business that is in competition with Employer (a) within the principal State of his employment, or (b) within any other city, county or state where Employee had, within twelve (12) months prior to his leaving the employment of Employer, rendered services for or on behalf of Employer.

3. Employee further agrees that he will not during the term of her [sic] employment or for twelve (12) months thereafter (a) divulge to any person not an employee of Employer any trade secret, plan or method of operation, or special or confidential information employed in and conducive to Employer's business, or (b) directly or indirectly attempt to solicit or divert or take away any employees of Employer."

*Record* at 23–24. During his tenure with Heritage, McGlothen held a variety of positions, including project manager and interim division manager. In January 1998, he was assigned to a sales position. McGlothen did not like his new assignment and became unhappy in his position. He resigned on March 6, 1998.

At his exit interview with his managers, he was asked to turn in his laptop computer, cellular phone, pager, and magnetic pass key.

At that time, his managers reminded him that he had signed a non-compete agreement. He was never asked, nor did he offer, to turn over Heritage trade information that he possessed.

After leaving Heritage, McGlothen began work at Tierra Environmental Services (Tierra), a firm in competition with Heritage. After a brief stint there, he began working at National Industrial Maintenance (National). While employed at these firms, he contacted and solicited Heritage customers. He also contacted a former coworker at Heritage and attempted to persuade him to leave Heritage and join him at Tierra.

When Heritage learned that McGlothen retained information it considered confidential and was contacting former customers and coworkers, it filed for and received a temporary restraining order. It also sought a preliminary injunction to enforce the terms of the covenant not to compete. At the preliminary injunction hearing, McGlothen turned over all Heritage materials. The materials in question included a spreadsheet program for producing bids which included Heritage's direct costs, customer lists, target customer lists, completed proposals, completed project lists, generator lists, and fee schedules.

The trial court issued extensive findings of fact and conclusions, and enjoined McGlothen from soliciting work from Heritage customers, working in the industry in the territory which he had formerly worked for Heritage, divulging confidential information, and soliciting Heritage employees to work for other firms for a period of one year from his termination. At McGlothen's request, the trial court certified this order for interlocutory appeal. We accepted jurisdiction pursuant to Indiana Appellate Rule 4(B)(3).

## DISCUSSION AND DECISION

### I. Protectable Interest

Generally, covenants not to compete are disfavored by law because they restrain trade. *Hahn v. Drees, Perugini & Co.*, 581 N.E.2d 457, 459 (Ind.Ct.App.1991). Nevertheless such covenants will be enforced where they meet the following test: 1) the restraint is reasonably necessary to protect

the employer's business; 2) it is not unreasonably restrictive of the employee; and 3) the covenant is not antagonistic to the general public. *Slisz v. Munzenreider Corp.*, 411 N.E.2d 700, 704 (Ind.Ct.App.1980). In applying this test, we have held that an employer must demonstrate some special facts giving his former employee a unique competitive advantage or ability to harm the employer before the employer is entitled to the protection of a non-competition covenant. *Id.* Those special facts may include, but are not limited to, such things as trade secrets known by the employee, the employee's unique services, confidential information such as customer lists known to the employee, or the existence of a confidential relationship. *Id.* However, an employer is not entitled to protection from an employee's knowledge, skill, or general information acquired through experience or instruction while in the employment. *Century Personnel, Inc. v. Brummett*, 499 N.E.2d 1160, 1163 (Ind.Ct. App.1986).

Whether Heritage has a legally protectable interest in the information retained by McGlothen is the heart of the dispute between the parties. McGlothen concedes that he signed a non-compete agreement and that he retained certain information when he left Heritage. He argues that Heritage does not have a legally protectable interest to justify the enforcement of the covenant not to compete. By contrast, Heritage argues that it has two independent interests here: the confidential information McGlothen appropriated and its good will.

### A. Confidential Information

The trial court determined that the information McGlothen appropriated was confidential information in which Heritage had a protectable interest. McGlothen first argues that the trial court applied the improper standard for determining whether Heritage's information is "confidential information." The trial court relied on the test in *Amoco Prod. Co. v. Laird*, 622 N.E.2d 912 (Ind.1993) to find that Heritage's information was confidential. In *Amoco*, our supreme court held that information that is the result of extensive compiling efforts can be protectable, even if it is developed from data and

technology in the public domain. McGlothen argues that *Amoco* is distinguishable because the information at issue here—customer names, addresses, and requirements—is readily ascertainable from observation, and because the creation of the lists and reports here were not the products of extensive compiling efforts.

McGlothen contends that the correct standard is instead set out in *American Shippers Supply Co. v. Campbell*, 456 N.E.2d 1040 (Ind.Ct.App.1983). In *American Shippers*, the court rejected the employer's argument that its customer contact information was protectable. *Id.* at 1043–44. The court relied on the fact that some of the information was readily available in trade publications, while the remaining information was available to everyone employed by the employer and was not treated as confidential. The court concluded that "the employer must demonstrate a protectable interest in the customer list where the items are not novel or unique." *Id.* at 1045. Whether customer information constitutes a trade secret or confidential information depends upon the facts of each individual case. *Woodward Ins. Inc. v. White*, 437 N.E.2d 59, 67 (Ind.1982).

McGlothen's argument fails even under the standard he advances. Heritage offered evidence that it regarded the information at issue as confidential. Glenn Boresi, Heritage's Vice–President, testified that Heritage considered its cost and price information "absolutely confidential." *Record* at 470. Boresi explained that if Heritage's competitors were able to obtain and use this information, they would gain a competitive advantage over Heritage in bidding and winning projects. One of the more sensitive documents recovered from McGlothen was stamped with the word "confidential." In addition, Boresi testified that although Heritage's operations required it to allow all project managers to have access to this information, Heritage required all such employees to sign a confidentiality agreement and covenant not to compete. In contrast, McGlothen points to his own testimony that the information at issue is not confidential because most of the information is already known, that much of the information is readily given out

by Heritage on request from its customers, that employees in the industry constantly change firms, providing a source of inside information to each firm about how the others operate, that the information is easily ascertainable, and that Heritage made no attempts to maintain the secrecy of the information. McGlothen asks us to reject the evidence offered by Heritage in favor of his own testimony to the contrary. This we cannot do. An appellate court is not empowered to reweigh the evidence properly heard in the trial court. *Slisz,* 411 N.E.2d at 710. The trial court heard all of the evidence during an extensive hearing lasting four days. It was in the best position to judge the credibility of witnesses and decide what weight to assign the conflicting testimony that it heard. We will not disturb its judgment on appeal. There was sufficient evidence for the trial court to conclude that Heritage's information was confidential.[1]

## B. Good Will

As an incident to its business, an employer is entitled to contract to protect the good will of the business. *Field v. Alexander & Alexander of Indiana, Inc.,* 503 N.E.2d 627, 633 (Ind.Ct.App.1987), *trans. denied* (1988). Elements of this good will include the names and addresses and requirements of customers and the advantage acquired through representative contact. *Id.* If an employee is hired to generate such good will, he may be enjoined from subsequently contacting his former customers or using that good will to his advantage. *Norlund v. Faust,* 675 N.E.2d 1142, 1154 (Ind.Ct.App. 1997), *opinion clarified on denial of reh'g* 678 N.E.2d 421 (Ind.Ct.App.1997), *trans. denied.*

McGlothen argues that Heritage did not have a protectable interest in its good will because good will is only protectable when it is the product of an exclusive relationship between the employee and the employer's customers. Because he never had exclusive contact with Heritage customers, McGlothen contends that Heritage has no protectable interest in its good will. We disagree. Whether the relationship between the former employee and the employer's customers was exclusive goes to the extent and degree of the good will developed, not to whether the employer is entitled to protection. Heritage introduced evidence that McGlothen had direct contact with its customers and that much of its business was repeat business, which has been recognized as a source of protectable good will. *See Licocci v. Cardinal Assoc., Inc.,* 445 N.E.2d 556 (Ind.1983) (where business consists of repeat customers and product or service is indistinguishable from that of competitors, repeat business can be an element of protectable good will). McGlothen himself agreed that, from the perspective of Heritage's customers, he *was* Heritage. The trial court correctly concluded that Heritage had a protectable interest in its good will.

## II. Preliminary Injunction

The grant or denial of a preliminary injunction rests within the equitable discretion of the trial court and will be reversed only upon a showing of abuse of discretion. *Northern Indiana Public Service Co. v. Dozier,* 674 N.E.2d 977, 989 (Ind.Ct. App.1996). Nevertheless, the power to issue an injunction should be used sparingly, and such relief should not be granted except in rare circumstances in which the law and facts are clearly in the moving party's favor. *Id.*

---

1. McGlothen also argues that the trial court erred in relying on a contractual provision as proof that Heritage had a protectable interest. The contract between the parties provided that the information at issue was confidential. McGlothen argues that this stipulation is void because it purports to make a judicial determination. He relies on *Ed Bertholet & Assoc., Inc. v. Stefanko,* 690 N.E.2d 361 (Ind.Ct.App.1998), in which the employer attempted to rely on a contractual provision that the employer was entitled to a preliminary injunction in the case of the employee's breach of a covenant not to compete.

This court held that this provision was void because it "would impermissibly remove the determination of whether to grant or deny an injunction from the discretion of the trial court and oust that court's inherent jurisdiction." *Id.* at 364. We believe that McGlothen misconstrues the trial court's findings. The trial court merely cited the contractual provision, along with many other facts, in support of its finding that the information in question was confidential. It did not allow its own determination to be supplanted by contract.

■ In determining whether the trial court abused its discretion, we look to the trial court's findings of fact. *Id.* We must determine whether the findings validly support the court's decision. *Id.* The findings will not be set aside unless clearly erroneous. *Id.* The findings are clearly erroneous when the record lacks any facts or reasonable inferences to support them. *Jay County Rural Electric Membership Corp. v. Wabash Valley Power Ass'n, Inc.,* 692 N.E.2d 905, 908–09 (Ind.Ct.App.1998), *trans. denied.*

■ The trial court's discretion to grant or deny a preliminary injunction is measured by several factors: 1) whether the movant's remedies at law are inadequate, causing irreparable harm pending resolution of the substantive action; 2) whether the movant has demonstrated at least a reasonable likelihood of success at trial by establishing a prima facie case; 3) whether the threatened injury to the movant outweighs the potential harm the grant of the injunction would occasion on the nonmovant; and 4) whether the public interest will be disserved. *Id.* If the movant fails to prove any one or more of these requirements, the trial court's grant of an injunction is an abuse of discretion. *Id.*

■ McGlothen argues that Heritage presented insufficient evidence on three of the four required elements necessary for a grant of a preliminary injunction. The only element not at issue is whether the public interest would be disserved.

### A. Irreparable Harm

■ McGlothen argues that Heritage presented no evidence of irreparable harm, but mere economic injury only. A party which suffers "mere economic injury" is not entitled to injunctive relief because an award of post-trial damages is sufficient to make the party whole. *Xantech Corp. v. Ramco Indus., Inc.,* 643 N.E.2d 918, 921 (Ind.Ct. App.1994). McGlothen contends that the trial court applied the wrong standard by relying on *Norlund v. Faust,* 675 N.E.2d 1142 (Ind.Ct.App.1997), which he asserts is incorrectly decided. We disagree.

In *Norlund,* this court affirmed the grant of a preliminary injunction to enforce a covenant not to compete. The dispute between the parties arose after the termination of their employment relationship. Dr. Faust, an ophthalmologist, hired Dr. Norlund, a respected and personable optometrist, to obtain referrals from other area optometrists for secondary eye care. Dr. Norlund relied on his personal contacts with the other optometrists and built a successful network of referrals. After the parties were unable to agree during renegotiation of their contract, Dr. Norlund assisted his wife, also an optometrist, in setting up a facility to compete with Dr. Faust's. He solicited the same optometrists that he contacted on behalf of Dr. Faust, informed them of this new facility, and encouraged them to join with him to be independent of ophthalmologists. Dr. Faust sought and received a preliminary injunction to enforce the covenant not to compete. This court affirmed, stating that the trial court's findings and conclusions reflected irreparable harm to Dr. Faust. We stated,

> "Appellants first argue that Faust has not carried his burden of showing that his remedies are inadequate at law and that he will suffer irreparable harm. It is true that a party seeking an injunction must show irreparable injury. However, the irreparable injury requirement does not demand that Faust point to specific losses in his business. As stated by the trial court: '[i]njunctive relief is appropriate if it is more practical or efficient than that afforded by law'. In fact, if Faust could point to a specific dollar amount of losses, then a remedy at law would be sufficient. When a covenant not to compete of this nature is breached, it follows that the employer will suffer harm. It would be pure speculation to place a dollar amount on the damages, and an injunction against the prohibited behavior is the most efficient way to lift the burden of that harm from the shoulders of the employer who contracted so as not to suffer such harm."

*Id.* at 1149–50 (citations omitted).

Relying on *Norlund,* here the trial court concluded that Heritage had demonstrated irreparable harm because it showed that McGlothen had breached his non-compete agreement and because a preliminary injunc-

tion was Heritage's most efficient remedy. The trial court's ruling was correct. There was evidence in the Record that Heritage would suffer irreparable harm in terms of damage to its reputation, damage to its good will, and downsizing and laying off employees. Further, the very nature of the circumstances here reflect the harm that would come to Heritage if McGlothen were permitted to continue to breach his covenant not to compete while using confidential information that he admits he appropriated from Heritage. McGlothen was using sensitive information he took from Heritage to compete with Heritage for customers. Moreover, Heritage made a sufficient showing of irreparable harm under even McGlothen's analysis. Boresi testified that if Heritage's Hammond office lost the customers that McGlothen was pursuing, it would lead to downsizing and laying off of employees, and perhaps the closing of the office. He also testified that Heritage's reputation was in jeopardy and that if it lost some of its major customers, other customers would question the company's capabilities. We agree with the trial court that Heritage presented sufficient evidence of irreparable harm.

### B. Reasonable Probability of Success at Trial

The likelihood of Heritage's success on the merits turns largely on whether the information it is seeking to protect is protectable. Because we have already decided that the information at issue here is protectable confidential information, we conclude that Heritage has made a sufficient showing of a reasonable likelihood of success on the merits.

### C. Balance of Harms

Lastly, McGlothen claims that the balance of harms does not favor the preliminary injunction. He claims that the injunction substantially interferes with his ability to earn a livelihood. He states that he is fifty-four years old and has worked in the industry for many years. He notes that he had already been terminated from one position because of the litigation with Heritage and that he will be unemployable until the expiration of the non-compete agreement. He also notes that Heritage has actually suffered no harm by his actions because his attempts to solicit Heritage's customers and employees were not successful.

Again, McGlothen merely asks us to reweigh the evidence and find contrary to the trial court. The trial court determined that the balance of harms analysis tipped in favor of Heritage. The evidence showed that McGlothen is an intelligent man, with many years of experience in this industry. Nothing in the contract prevents McGlothen from acquiring employment outside the territory specified in the agreement or from obtaining employment with a customer. Heritage presented unrebutted evidence that it could suffer severe downsizing and layoffs if the injunction were not granted and McGlothen were allowed to continue using its confidential information and soliciting Heritage's customers. We accept the trial court's determination that on balance, the harm to Heritage of not granting the injunction is greater than the harm to McGlothen from granting it.

Affirmed.

BAILEY, J., and MATTINGLY, J., concur.

**J.P.B., Appellant–Respondent,**