Brian K. COHOON, Appellant–
Defendant,

v.

FINANCIAL PLANS & STRATEGIES,
INC., an Indiana Corporation, and Fi-
nancial Planning Investments, Inc.,
an Indiana Corporation, Appellees–
Plaintiffs.

No. 41A04–0102–CV–77.

Court of Appeals of Indiana.

Dec. 28, 2001.

Todd J. Kaiser, T. Joseph Wendt, Ogletree Deakins Nash Smoak & Stewart, Indianapolis, IN, Attorneys for Appellant.

Thomas L. Blackburn, Cohen & Malad, Indianapolis, IN, Attorney for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Brian K. Cohoon brings this interlocu-

tory appeal[1] from the trial court's grant of a preliminary injunction to enforce the terms of his covenant not to compete with his former employer, Financial Plans & Strategies, Inc. and Financial Planning Investments, Inc. (FPS). Cohoon raises several issues for our review, which we consolidate and restate as follows:

1. Whether the parties' covenant not to compete is broader than necessary to protect FPS' legitimate interests.

2. Whether FPS first breached the parties' employment agreement, thereby prohibiting it from later enforcing the covenant not to compete against Cohoon.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In August 1998, FPS hired Cohoon as a certified financial planner. Cohoon's duties included selling securities and offering financial planning services to FPS' customers located primarily in Johnson, Marion, and adjacent counties. As part of his employment with FPS, Cohoon entered into an employment agreement that contained a covenant not to compete, which reads in part:

Section 4.2. No Competitive Business. In the event of the Employee's election to terminate this Agreement ... the Employee hereby agrees that, [for two years from the date of termination of this agreement], neither the Employee nor any of his employees, agents or affiliates will, directly or indirectly, conduct any business similar to the Business with any Client or own, manage, operate, control, invest in, lend to, acquire an interest in, or otherwise engage or participate in (whether individually or as a partner, stockholder, joint venture, investor or other participant), or use, or permit their names to be used within, any Competitive Business within [Marion, Johnson, and all counties surrounding and contiguous thereto], without regard to whether the Competitive Business has an office or other business facility within or outside the Territory.

Section 4.3. No Interference with the Business. In the event of the Employee's election to terminate this Agreement ... the Employee hereby agrees that, during the [two-year restricted period], neither the Employee nor any of his employees, agents or affiliates shall, directly or indirectly: (a) cause or attempt to cause any Client or any dealer, supplier or any other person, which had a previous business relationship with the Company or the Business at any time during the twelve (12) months prior to the date of the termination of this Agreement in accordance with Article VI, to divert, terminate, limit or in any manner modify or fail to enter into, any actual or potential business relationship or contract with the Company or its affiliates; (b) recruit, solicit or otherwise induce or influence any Personnel or Clients to discontinue such employment, agency or other relationship with the Company; or (c) employ or seek to employ, or cause any Competitive Business to employ or seek to employ, as an employee for any Competitive Business any Personnel: provided, however, nothing in this Agreement shall be deemed to prohibit the Employee from continuing or commencing a personal relationship or non-competitive business relationship.

Section 4.4. No Disclosure of Proprietary Information. The Employee hereby agrees that neither the Employee nor any of his employees, agents or

---

1. *See* Ind. Rules of Appellate Procedure, Rule 14(A).

affiliates will, at any time, directly or indirectly, disclose, use or otherwise exploit for their own benefit or for the benefit of any person, other than the Company, any Confidential Information. Upon termination of this Agreement, the Employee will return immediately all such documents and information which comprise Confidential Information and which have been previously delivered in connection with this Agreement.

Appellant's App. at A30. In addition, the employment agreement contained a "Vacations, Holidays and Sick Leave" provision, which provides in relevant part:

> Throughout the duration of this Agreement, the Employee shall be entitled to paid vacations during each Contract Year, [the period beginning August 1st and ending July 31 of each year], at and during such times as mutually agreed to by the Company and the Employee. The aggregate length of such vacations applicable to a particular Contract Year shall be as follows: ten (10) days during the last six (6) months of the 1998 Contract Year; ten (10) days during the 1999 Contract Year; and fifteen (15) days during the 2000 Contract Year and during each Contract Year thereafter.

Appellant's App. at A29. The parties later agreed that Cohoon would receive twenty days of vacation for the 2000 contract year.

During his tenure at FPS, Cohoon consulted with about 250 of FPS' roughly 1000 clients, and he served as the primary advisor for fifteen of the largest clients. Cohoon and FPS maintained extensive computerized records and "to-do" lists concerning existing and prospective customers that included names and addresses, qualifying information, financial status and needs, and follow-up strategies for FPS to pursue. During his employment, Cohoon had access to all of this information.

While working for FPS, Cohoon was introduced to representatives of Heartland Community Bank ("Heartland"). Around July 2000, Cohoon began negotiations with Heartland to leave FPS and to become a vice president at Heartland, providing financial planning and investment services to its customers. On October 6, 2000, Cohoon tendered his written resignation to FPS, in which he stated his intention to accept Heartland's offer of employment, and proposed that his last day of work be October 20, 2000. In preparation for his departure, Cohoon drafted letters to the fifteen clients for whom he was the primary advisor and informed them of his upcoming departure, and advised them to continue using FPS. On October 13, 2000, however, Michael Meiners, the president and sole owner of FPS, terminated Cohoon, gave him one-week severance pay, and escorted him from the building. On October 31, 2000, FPS tendered to Cohoon payment for thirteen unused days of vacation. Meiners later discovered that some of Cohoon's computerized "to-do" lists relating to several of his former clients were missing.

On October 18, 2000, FPS filed a complaint for a temporary restraining order and preliminary injunction seeking to enforce the terms of the covenant not to compete in Cohoon's employment contract. Following a hearing, the trial court, in a written decision detailing numerous findings and conclusions, granted FPS' request and imposed a preliminary injunction requiring Cohoon to return any of FPS' property in his possession and restraining him from, among other things, working in a similar capacity for any business competitor of FPS within the designated counties. This appeal followed.

## DISCUSSION AND DECISION

### Standard of Review

██ The grant or denial of a preliminary injunction rests within the equitable

discretion of the trial court and will be reversed only upon a showing of abuse of discretion. *McGlothen v. Heritage Envtl. Servs., L.L.C.,* 705 N.E.2d 1069, 1073 (Ind. Ct.App.1999). Nevertheless, the power to issue an injunction should be used sparingly, and such relief should not be granted except in rare circumstances in which the law and facts are clearly in the moving party's favor. *Id.*

■ The trial court's discretion to grant or deny a preliminary injunction is measured by several factors: 1) whether the movant's remedies at law are inadequate, causing irreparable harm pending resolution of the substantive action; 2) whether the movant has demonstrated at least a reasonable likelihood of success at trial by establishing a prima facie case; 3) whether the threatened injury to the movant outweighs the potential harm the grant of the injunction would occasion on the nonmovant; and 4) whether the public interest will be disserved. *McGlothen,* 705 N.E.2d at 1073.

■ In determining whether the trial court abused its discretion, we look to the trial court's findings of fact and determine whether the findings validly support the court's decision. *Id.* at 1074. We will not set aside the trial court's findings unless they are clearly erroneous. *Id.* Findings are clearly erroneous when the record lacks any facts or reasonable inferences to support them. *Id.* We consider the evidence only in the light most favorable to the judgment and construe findings together liberally in favor of the judgment. *Barlow v. Sipes,* 744 N.E.2d 1, 5 (Ind.Ct. App.2001).

**Covenant Not to Compete**

■ In determining the reasonableness of the covenant not to compete, we examine whether the employer has asserted a legitimate interest that may be protected by a covenant. *Burk v. Heritage Food Serv. Equip., Inc.,* 737 N.E.2d 803, 811 (Ind.Ct.App.2000). If the employer has asserted a legitimate, protectable interest, then we determine whether the scope of the agreement is reasonable in terms of time, geography, and types of activity prohibited. *Id.* The employer bears the burden of showing that the covenant is reasonable and necessary in light of the circumstances. *Id.* The employer must demonstrate, in other words, that "the former employee has gained a unique competitive advantage or ability to harm the employer before such employer is entitled to the protection of a noncompetition covenant." *Id.* (citation omitted).

Cohoon contends that the trial court erred when it found that the covenant not to compete was enforceable and issued a preliminary injunction in favor of FPS. In particular, Cohoon argues, on several fronts, that the covenant not to compete was broader than necessary to protect FPS' legitimate interests.[2] We shall address Cohoon's contentions in turn.

### 1. *FPS' Good Will*

The parties here agree that FPS' legitimate protectable interest is its good will with its customers. Cohoon argues that the covenant impermissibly restricts his contact with past FPS clients and those clients with whom Cohoon had no direct contact and is, therefore, overbroad. We do not agree.

**2.** Because the trial court did not err when it concluded that the parties' covenant not to compete was enforceable as written, we need not address Cohoon's secondary argument that the covenant is not separable into parts and therefore not susceptible to redaction or blue penciling by the court.

■ As an incident to its business, an employer is entitled to contract to protect the good will of the business. *Donahue v. Permacel Tape Corp.,* 234 Ind. 398, 127 N.E.2d 235, 240 (1955). Elements of this good will include secret or confidential information such as the names and addresses and requirements of customers and the advantage acquired through representative contact. *McGlothen,* 705 N.E.2d at 1073; *Donahue,* 234 Ind. 398, 127 N.E.2d at 240. These are property rights that an employer is entitled to protect. *Donahue,* 234 Ind. 398, 127 N.E.2d at 240.

■ Here, section 4.3 of the parties' covenant prohibits Cohoon from associating for two years with "any [c]lient or any dealer, supplier or any other person, which had a previous business relationship with the [c]ompany or the [b]usiness at any time during the twelve (12) months prior to the date of the termination of this agreement." Appellant's App. at A30. This provision, however, does not restrict Cohoon's contact with past clients of FPS.

We acknowledge this court's historical disapproval of non-competition clauses that purport to protect an employer's interest in past clients. *See Seach v. Richards, Dieterle & Co.,* 439 N.E.2d 208, 214 (Ind. Ct.App.1982); *see also Hahn v. Drees, Perugini & Co.,* 581 N.E.2d 457, 461 (Ind.Ct. App.1991). These cases refer to past clients as those with whom the employee had no contact during the term of his employment. *Seach,* 439 N.E.2d at 214; *Hahn,* 581 N.E.2d at 461. Cohoon interprets this definition incorrectly to mean that he may contact past clients, even those that were customers during his tenure, so long as he had no direct contact with those customers. To the contrary, past clients means those persons or entities that had no contact with FPS during Cohoon's tenure there. *See Hahn,* 581 N.E.2d at 461 n. 3. Because Cohoon was employed at FPS for over two years and the parties' covenant only prohibits Cohoon from contacting those clients doing business with FPS within the twelve (12) months prior to his departure, it correctly prohibits Cohoon from doing business with present not past clients of FPS. *See Hahn* 581 N.E.2d at 461 n. 3 (defining clients who did business with the company during the former employee's tenure as present clients).[3]

### 2. *Geographical Restrictions*

Cohoon next asserts that the covenant is unenforceable because it prohibits him from contacting FPS clients within Marion, Johnson, and the adjacent counties. Specifically, Cohoon posits that such a geographical restriction is too broad and that FPS has no protectable good will interest in a geographical area. Again, we cannot agree.

■ We note that a covenant not to compete must be sufficiently specific in scope to coincide with only the legitimate interests of the employer and to allow the employee a clear understanding of what conduct is prohibited. *Field v. Alexander & Alexander of Indiana,* 503 N.E.2d 627, 635 (Ind.Ct.App.1987). Although one method of limiting a covenant's scope is to impose territorial boundaries, as the specificity of limitation regarding the class of person with whom contact is prohibited increases, the need for limitation ex-

---

**3.** Cohoon also suggests that regardless of the time frame, FPS has no protectable good will interest in those clients that Cohoon never personally contacted. Personal contact, however, is not an essential element of good will, and our courts have upheld covenants that restricted a former employee from contacting those customers with whom his former employer did business during his tenure, considering such clients to be present not past ones. *See Hahn,* 581 N.E.2d at 461–62; *see also Seach,* 439 N.E.2d at 214–15.

pressed in territorial terms decreases. *Seach*, 439 N.E.2d at 213. In fact, a covenant not to compete may even be enforced absent a territorial limitation where the covenant sufficiently restricts the class of prohibited contacts. *See Seach*, 439 N.E.2d at 213 (finding the phrase "present, past, or prospective" clients—later "blue-penciled" to include only present clients—was sufficiently narrow such that geographical limitation was not required).

In *Field*, the covenant restrained the former employee from contacting those "customers with whom [the employee] had contact within two years of leaving [the company]." *Field*, 503 N.E.2d at 635. We determined that this class of prohibited contacts was well defined and specific, thereby eliminating the need for any geographical limitation. Here, the parties' covenant defines the class of persons with whom Cohoon may have no contact as those clients, suppliers, dealers, or contacts with whom the company did business during the twelve (12) months prior to Cohoon's departure. We find this restriction to be sufficiently definite such that the covenant is enforceable without a geographical limitation. Cohoon's complaints about the substance of the geographical boundaries are, thus, unavailing because even if we agreed with him that the provision was overbroad and struck it, the cove-

nant would still be enforceable using the class of persons with whom Cohoon may have no contact.[4]

### 3. *Unrelated Duties*

Cohoon argues next that the covenant prohibits him from working for a competitor in a capacity unrelated to the duties he performed at FPS. Specifically, Cohoon points to that provision of the covenant that prohibits his general participation in "any [c]ompetitive [b]usiness within the territory." Appellant's App. at A30. Cohoon argues that such phrase restricts his ability to work even as a "janitor, receptionist, or secretary for any business competitor." Brief of Appellant at 33.

Cohoon's argument, however, overlooks the following language in the covenant: "nothing in this [a]greement shall be deemed to prohibit the [e]mployee from continuing or commencing a personal relationship or non-competitive business relationship." Appellant's App. at A30. This language gives Cohoon the right to work for any company in a capacity different from that which he maintained at FPS. Thus, the covenant does not prevent Cohoon from accepting a position as a janitor, receptionist, or another position unrelated to providing financial planning services for one of FPS' competitors.[5]

---

4. For the record, we do not conclude that the geographical limitation is impermissible. To the contrary, Cohoon concedes that FPS did most of its business with clients in those designated counties, and in fact, he did most of his business in those counties as well. Thus, the limitation is not overbroad.

5. Cohoon further alleges that the covenant's phrase that limits him from "directly or indirectly, conduct[ing] any business similar to the [b]usiness with any [c]lient" is too vague and therefore renders the entire covenant unenforceable. Cohoon's argument overlooks the fact that this single phrase is immersed in an entire paragraph describing what competi-

tive business Cohoon shall be restricted from pursuing. That paragraph reads, in relevant part, as follows:

> [T]he [e]mployee ... will [not] directly or indirectly, conduct any business similar to the [b]usiness with any [c]lient or own, manage, operate, control, invest in, lend to, acquire an interest in, or otherwise engage or participate in whether individually or as a partner, stockholder, joint venture, investor or other participant), or use, or permit their names to be used within, any [c]ompetitive [b]usiness within the territory ...

Appellant's App. at A30. We find this provision, taken in its entirety, to be specific

## Accrued Vacation Pay

█ Cohoon maintains that FPS first breached the parties' employment contract and, thus, that FPS cannot enforce the covenant not to compete against him. Specifically, Cohoon argues that FPS breached the contract when it failed to timely pay him for accrued and unused vacation days following his termination, in violation of Indiana Code Section 22-2-5-2. Again, we must disagree.

Cohoon's argument hinges on the assumption that FPS otherwise breached the parties' employment contract before Cohoon's alleged breach. However, Meiners testified that after Cohoon left FPS, he discovered that "to do" lists regarding several clients were missing from Cohoon's files. Meiners also discovered an advertising "brochure" in Cohoon's computer that Cohoon had prepared for Heartland while he was still employed by FPS. Appellee's App. at A50. Meiners stated that the brochure looked very similar to FPS' advertising brochure, and that the language was, in some cases, taken verbatim from FPS' brochure. Appellee's App. at A50. In fact, Cohoon does not dispute that he drafted the brochure while still employed at FPS. Reply Brief of Appellant at 15.

In addition, prior to leaving FPS, Cohoon registered as a broker's representative with Atlas Brokerage Company, L.P. All FPS broker representatives, including Cohoon, were registered with Sun America Brokers, and Meiners testified that FPS and Sun America rules prohibited brokers from becoming representatives for two or more broker-dealers without prior written authorization. Brief of Appellee at 7; Appellant's App. at A39. Cohoon describes the registration issue as a "bogeyman" and contends, "the dual registration was not a material breach." Reply Brief of App. at

16. In fact, the Indiana Administrative Code prohibits agents from registering with more than one broker-dealer without written authorization from both. *See* 710 Ind. Admin. Code § 1-15-1(d). And, as a result of Cohoon's dual registration, Sun America terminated its relationship with Cohoon, thereby essentially preventing him from performing his financial responsibilities "for FPS. Meiners testified that Cohoon effectively self terminated himself by becoming [dually] licensed ... he had terminated himself before we even [knew] about it." Appellant's App. at A39.

Section 2.3 of the parties' employment agreement provides:

> **Exclusive Employment.** For so long as the [e]mployee remains employed hereunder, the [e]mployee shall (a) faithfully to the best of his ability perform and render the above described services and duties in connection with the [b]usiness as directed by the [c]ompany and (b) devote all of his business interests and efforts to the [c]ompany on a full time basis and shall not, without the prior express written consent of the [c]ompany, conduct, transact or otherwise participate in any other business or business venture.

Appellant's App. at A27. Cohoon's actions violated this section of the parties' contract. The trial court specifically found that Cohoon breached the contract when he registered with Atlas Brokerage, and that at the time of Cohoon's departure, FPS had not violated the parties' agreement. Appellant's App. at A10, A13. Since these findings are supported by the facts presented, we cannot say that the trial court's ruling on this issue was clearly erroneous. Because Cohoon, rather than FPS, first breached the parties' employment agreement, Cohoon's argument that

---

enough to apprise Cohoon of his obligations thereunder, and it does not prohibit "seem-

ingly harmless conduct." *Seach,* 439 N.E.2d at 214.

FPS cannot enforce the covenant not to compete is without merit.[6]

### CONCLUSION

In sum, the trial court's findings that the parties' covenant not to compete was not broader than necessary to protect FPS' legitimate interests and that Cohoon, not FPS, first breached the parties' employment agreement are supported by facts in the record and reasonable inferences to be drawn therefrom. Its findings and conclusions, therefore, are not clearly erroneous. The trial court did not err when it granted FPS' request for a preliminary injunction.

Affirmed.

SHARPNACK, C.J., and RILEY, J., concur.

---

**6.** Cohoon also argues that the parties' agreement is void because it violates Indiana's public policy against impeding the public's ability to obtain legal counsel of its choice. Cohoon posits that FPS provides legal services to its financial clients through Meiners, who is a practicing attorney. Meiners testified that, as a sole practitioner, he practiced some law in areas related to estate and financial planning. Appellant's Supp.App. at 89. However, Meiners maintained that the legal aspect was "not part of" FPS. *Id.* The trial court agreed, concluding that "no evidence was presented that FPS per se engaged in providing legal services." Appellant's App. at 13. We find nothing in the record to suggest this finding was clearly erroneous.