**Derek J. SHARVELLE, M.D., P.C., d/b/a Lafayette Eye Center, and Frankfort Eye Center, Appellant–Defendant,**

v.

**David O. MAGNANTE, M.D., Appellee–Plaintiff.**

No. 79A02–0501–CV–14.

Court of Appeals of Indiana.

Sept. 7, 2005.

Publication Ordered Oct. 25, 2005.

James R. Schrier, Reiling Teder & Schrier, Lafayette, for Appellant.

John P. Ryan, Kevin J. Gfell, Hall, Render, Killian, Heath & Lyman, Indianapolis, for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Derek J. Sharvelle, M.D., P.C. d/b/a Lafayette Eye Center (collectively "LEC") appeals from the trial court's grant of summary judgment in favor of David O. Mag-

nante, M.D. in this declaratory judgment action. LEC presents several issues for our review:

1. Whether the trial court erred when it concluded that the parties' covenant not to compete is unenforceable.
2. Whether the trial court erred when it declined to enforce the parties' restrictions against solicitation.

We affirm in part, reverse in part, and remand with instructions.[1]

## FACTS AND PROCEDURAL HISTORY

Dr. Sharvelle is an ophthalmologist, and he began his practice in Lafayette in 1977. Dr. Sharvelle gradually expanded his practice, and in 1992, he constructed a new facility in Lafayette that consisted of several technician rooms, six examination rooms, and state-of-the-art ophthalmologic equipment ("LEC clinic"). In 1993, Dr. Sharvelle constructed a multi-specialty ambulatory surgery center next door to the LEC clinic. LEC has also opened satellite offices in Frankfort, Monticello, Crawfordsville, Sheridan, and Noblesville, and it is affiliated with facilities in Kokomo, Indianapolis, and Ft. Wayne. LEC currently provides comprehensive eye care services to patients residing in seventy-eight counties in Indiana.

Dr. Magnante is board certified in ophthalmology and trained in plastic and reconstructive surgery. Originally from Massachusetts, Dr. Magnante was participating in a fellowship program in Ohio when LEC recruited him. In 1996, Dr. Magnante entered into a three-year employment contract with LEC. He was primarily responsible for running LEC's eye center in Crawfordsville.

In 1999, the parties entered into another three-year employment contract with auto-matic one-year renewals if notice of termination was not given. Under the terms of the contract, Dr. Magnante agreed to provide medical services to patients of LEC as a physician in the specialty of ophthalmology. Further, the parties' contract provides in relevant part:

10. **Covenants.**

10.1 **Covenant not to Compete.** During the time Employee is employed by the Corporation, and for a two (2) year period after Employee's employment with the Corporation has been terminated (by either party and for whatever reason), Employee will not directly or indirectly:

(a) enter into or attempt to enter into the "Restricted Business" (as defined below) in Hamilton, White, Howard, Clinton and Tippecanoe Counties in the State of Indiana and all counties contiguous to any of the listed counties ("Restricted Area");

(b) induce or attempt to persuade any former, current or future employee, agent, manager, consultant, director, or other participant in the Corporation's business to terminate such employment or other relationship in order to enter into any relationship with Employee, any business organization in which Employee is a participant in any capacity whatsoever, or any other business organization in competition with the Corporation's business;

(c) induce or attempt to persuade any former, current or future patient of the Corporation, or of any physician affiliated with the Corporation, to cease being a patient of the Corporation or such physician or to become a patient of any other medical facility or business organization in which Employee is a participant in any capacity

---

1. We deny LEC's request for oral argument.

whatsoever, or of any other business organization in competition with the Corporation's business.

(d) use contracts, proprietary information, trade secrets, confidential information, patient lists, patient charts and records, customer lists, mailing lists, goodwill, or other intangible property used or useful in connection with the Corporation's business.

As used in this section 10.1 the term Corporation shall include the Corporation and any of its affiliates.

10.2 **Indirect Activity.** The term "indirectly," as used in Section 10.1 above, includes acting as a paid or unpaid director, member, officer, agent, representative, employee of, or consultant to any enterprise, or acting as a proprietor of an enterprise, or holding any direct or indirect participation in any enterprise as an owner, member, partner, limited partner, joint venturer, shareholder, or creditor.

10.3 **Restricted Business.** *The term "Restricted Business" means health care of every nature and kind.* Nevertheless, Employee may own not more than five percent of the outstanding equity securities of a corporation that is engaged in the Restricted Business if the equity securities are listed for trading on a national stock exchange or are registered under the Securities Exchange Act of 1934.

10.4 **Severability.** The covenants set forth in this section 10 shall be construed as a series of separate covenants, one for each county in which such restriction applies. If, in any judicial proceeding, a court of competent jurisdiction shall refuse to enforce any of the separate covenants deemed included in this Agreement, or shall find that the term or geographic scope of one or more of the separate covenants is unreasonably broad, the parties shall use their best good faith efforts to attempt to agree on a valid provision which shall be a reasonable substitute for the invalid provision. The reasonableness of the substitute provision shall be considered in light of the purpose of the covenants and the reasonable protectible interests of the Corporation and Employee. The substitute provision shall be incorporated into this Agreement. If the parties are unable to agree on a substitute provision, then the invalid or unreasonably broad provision shall be deemed deleted or modified to the minimum extent necessary to permit enforcement of all remaining provisions.

10.5 **Waiver** .... [F]or any breach by Employee of any covenant of this section 10 Employee shall pay to the Corporation $300,000 as liquidated damages, and it is declared and agreed by the parties that these sums shall, without proof, be deemed to represent the damages actually sustained by the Corporation by reason of the breach. The Corporation's right to recover liquidated damages for Employee's breach shall be in addition to every other remedy now or hereafter existing hereunder or at law or equity, including without limitation, the right to obtain injunctive relief; provided however if Employee wishes to conduct Restricted Business in the Restricted Area prior to the expiration of the two year period set forth herein, and pays to the Corporation the sum of $300,000 prior to conducting any such Restricted Business then the Corporation shall waive all restrictions set forth in this section 10 and shall forebear from seeking any other remedies.

Appellant's App. at 25–26 (emphasis added).

On December 1, 2003, LEC terminated Dr. Magnante's employment effective May

28, 2004. On May 30, 2004, LEC learned that Dr. Magnante would be practicing ophthalmology with Unity Healthcare in Lafayette and Athens Healthcare in Crawfordsville. As a result, LEC informed Dr. Magnante that it would be enforcing the covenant not to compete, and Dr. Magnante filed a declaratory judgment action asking that the trial court declare the covenant unenforceable as a matter of law. LEC filed a counterclaim for declaratory judgment that the covenant was enforceable. By agreement, Dr. Magnante deposited $300,000 with the trial court clerk pending resolution of the action.

Both LEC and Dr. Magnante filed summary judgment motions. Following a hearing, the trial court entered summary judgment in favor of Dr. Magnante and denied LEC's motion. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

When reviewing summary judgment, this court views the same matters and issues that were before the trial court and follows the same process. *Estate of Taylor ex rel. Taylor v. Muncie Med. Investors, L.P.*, 727 N.E.2d 466, 469 (Ind.Ct. App.2000), *trans. denied.* We construe all facts and reasonable inferences to be drawn from those facts in favor of the non-moving party. *Jesse v. American Cmty. Mut. Ins. Co.*, 725 N.E.2d 420, 423 (Ind.Ct. App.2000), *trans. denied.* Summary judgment is appropriate when the designated evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law. *Zawistoski v.*

*Gene B. Glick Co., Inc.*, 727 N.E.2d 790, 792 (Ind.Ct.App.2000).

We note that the trial court entered findings and conclusions in support of summary judgment. Although we are not bound by the trial court's findings and conclusions, they aid our review by providing reasons for the trial court's decision. *See Ledbetter v. Ball Mem'l Hosp.*, 724 N.E.2d 1113, 1116 (Ind.Ct.App.2000), *trans. denied.* If the trial court's entry of summary judgment can be sustained on any theory or basis in the record, we must affirm. *Id.*

### Issue One: Covenant Not to Compete

LEC contends that the trial court erred when it concluded that the parties' covenant not to compete is unenforceable. In *Pathfinder Communications Corp. v. Macy*, 795 N.E.2d 1103, 1109 (Ind.Ct.App. 2003), this court explained the relevant law as follows:

Indiana courts have generally recognized and respected the freedom to contract. However, covenants not to compete are in restraint of trade and are not favored by the law. "Noncompetition agreements are strictly construed against the employer and are enforced only if reasonable. Covenants must be reasonable with respect to the legitimate interests of the employer, restrictions on the employee, and the public interest." To determine the reasonableness of the covenant, we first consider whether the employer has asserted a legitimate interest that may be protected by a covenant. If the employer has asserted such an interest, we then determine whether the scope of the agreement is reasonable in terms of time, geography, and types of activity prohibited. "The employer bears the burden of showing that the covenant is reasonable and necessary in light of the circumstances." In other words, the employer must demonstrate

that " 'the former employee has gained a unique competitive advantage or ability to harm the employer before such employer is entitled to the protection of a noncompetition covenant.' "

(Internal citations omitted).

■ The ultimate determination of whether a noncompetition covenant is reasonable is a question of law. *Raymundo v. Hammond Clinic Ass'n*, 449 N.E.2d 276, 280 (Ind.1983). It follows that the reasonableness of such an agreement in each and every aspect is a question of law. *Id.* Because this issue is a pure question of law, it is particularly well-suited for disposition by summary judgment. *See Hopper v. Carey*, 810 N.E.2d 761, 764 (Ind.Ct.App. 2004), *trans. denied.*

### A. Legitimate Protectible Interest

■ LEC asserts that it has a legitimate protectible interest in its "good will, its established patient base, and the time and resources spent to build its practice[.]" Brief of Appellant at 14. We must agree. The undisputed evidence shows that Dr. Sharvelle has expended significant resources over the course of several years in establishing LEC's practice. The continued success of the practice, which is dependent upon patient referrals, is a legitimate interest worthy of protection. *See Medical Specialists, Inc. v. Sleweon*, 652 N.E.2d 517, 523 (Ind.Ct.App.1995), *trans. denied.* The presence of Dr. Magnante, who had no ties to Indiana before LEC recruited him, in the Lafayette area is a direct result of LEC's efforts to ensure a successful practice in Lafayette. *See id.* LEC has demonstrated that it has a legitimate interest worthy of protection by the covenant not to compete. *See id.; see also Harris v. Primus*, 450 N.E.2d 80, 85 (Ind. Ct.App.1983) (holding clinic had legitimate desire to protect its investment in physi-

cian and to restrict her competition with the clinic after she left).

### B. Scope of the Covenant

■ LEC next contends that the trial court erred when it concluded that the scope of the parties' covenant not to compete is overly broad. In the alternative, LEC maintains that the trial court should modify the scope of the covenant by "blue penciling" it to make it enforceable. We cannot agree.

Again, we must determine whether the scope of the agreement is reasonable in terms of time, geography, and types of activity prohibited. *See Burk v. Heritage Food Service Equip.*, 737 N.E.2d 803, 811 (Ind.Ct.App.2000). Here, the issue is whether the covenant is unreasonably restrictive as to the types of activity prohibited. In particular, the parties' non-compete covenant prohibits Dr. Magnante from practicing "health care of every nature and kind." Appellant's App. at 25.

The designated evidence shows that:
LEC provides comprehensive medical services relating to eye care including, but not limited to: yearly eye exams and eyeglass/contact prescription services; glaucoma management and surgery treatment; medical retina work; dry eye care; anterior segment work (cataracts, including no-stitch and/or clear cornea cataract surgery); ophthalmic plastic, reconstructive and orbital surgery; and refractive services (LASIK).

*Id.* at 35. Further, the designated evidence shows that under the terms of the parties' employment contract, Dr. Magnante was employed "as a physician to practice in the specialty of ophthalmology." Appellee's App. at 23. Thus, the evidence shows that LEC is engaged not in the practice of "health care of every nature and kind" but in the practice of ophthalmology.

But LEC designated evidence showing that Dr. Magnante practiced health care unrelated to the eye during his tenure at LEC. In particular, LEC submitted two supplemental affidavits from Dr. Sharvelle stating in relevant part: [2]

> 12. While LEC's primary practice involves ophthalmologic services, physicians who practice in other areas of medicine are also affiliated with LEC.
> 13. Since 1999 a plastic surgeon and a podiatrist have maintained offices at LEC and contributed to the financial success of LEC.
>
>   *   *   *   *   *   *
>
> 14. While employed by LEC, Plaintiff David O. Magnante, M.D. performed a variety of duties including comprehensive eye exams for children and adults, refractions for eyeglasses, medical evaluations and examinations of eyes and faces, medical and surgical treatment of medical conditions, and second opinions and consultations at the request of other doctors. Prior to surgery, Dr. Magnante took patient histories and conducted physical exams. During surgery, Dr. Magnante managed patients' cardio-pulmonary status and general health. He treated or advised patients concerning non-ophthalmologic conditions including diabetes, hypertension, cardiac conditions, and complications of pregnancy. As an employee of LEC Dr. Magnante was also required to perform general physical examinations regarding the general health of patients upon whom surgical procedures totally unrelated to ophthalmology were being performed by other physicians at the Lafayette Ambulatory Surgery Center.

Appellant's App. at 53–54. In addition, Dr. Sharvelle attached medical records related to two occasions when Dr. Magnante treated patients for non-eye-related ailments. LEC asserts that, in light of the broad range of medical care Dr. Magnante provided to patients, the covenant's prohibition against his practicing any type of health care is reasonable and necessary to protect LEC's interests.

But the evidence regarding the practice of general health care by Dr. Magnante and other physicians at LEC is unpersuasive. For instance, the reference to "patient histories" and "physical exams" conducted "prior to surgery" suggests that those services were conducted in conjunction with eye-related health care. And the documentation of Dr. Magnante's treatment of two toenail-related conditions is merely anecdotal. Overall, the evidence is vague. For instance, LEC has not demonstrated what percentage of its business stems from non-eye-related medical treatment. We conclude that LEC has not satisfied its burden to show that the circumstances of Dr. Magnante's employment render the broad restriction in the covenant reasonable and necessary.[3] *See Macy,* 795 N.E.2d at 1113.

---

**2.** The trial court refused to consider the two supplemental affidavits LEC submitted, and LEC contends that the trial court abused its discretion when it did so. But we need not address whether the trial court abused its discretion in that regard because, even considering those affidavits, we hold that the covenant not to compete is unenforceable.

**3.** In support of its contention, LEC cites to three opinions wherein, LEC maintains, Indiana courts have upheld similarly broad covenants not to compete entered into by physicians. *See Raymundo,* 449 N.E.2d at 276; *Sleweon,* 652 N.E.2d at 517; and *Harris,* 450 N.E.2d at 80. But we do not find the relevant analyses in those opinions applicable in this case. In *Raymundo,* the appellant-physician challenged the covenant's geographic restrictions, but there is no analysis regarding the restrictions on what type of medicine he could practice. In *Sleweon,* this court held that the prohibition against being involved in "any medical practice" was rea-

█ In the alternative, LEC urges us to modify the scope of the covenant using the "blue pencil" method. If a covenant is clearly divisible into parts, and some parts are reasonable while others are unreasonable, a court may enforce the reasonable portions only. *Burk*, 737 N.E.2d at 811. Under this process, known as "blue-penciling," a court strikes unreasonable provisions from the covenant. *Id.* When applying the blue pencil, a court must not add terms that were not originally part of the agreement. *Id.* Rather, "unreasonable restraints are rendered reasonable · by scratching out any offensive clauses to give effect to the parties' intentions." *Id.* (citation omitted).

LEC asserts that removing the phrase "of every nature and kind" would render the covenant enforceable. We cannot agree. "Health care" encompasses the spectrum of medical practice, and the phrase "of every nature and kind" is superfluous. As such, this suggested blue-penciling would not render the covenant enforceable.

█ LEC further asserts that the parties expressly authorized the court to modify the terms of the covenant if it were to be found overly broad and unenforceable. Paragraph 10.4 of the employment contract is a severability clause and provides:

> **Severability.** The covenants set forth in this section 10 shall be construed as a series of separate covenants, one for each county in which such restriction applies. If, in any judicial proceeding, a court of competent jurisdiction shall re-

fuse to enforce any of the separate covenants deemed included in this Agreement, or shall find that the term or geographic scope of one or more of the separate covenants is unreasonably broad, the parties shall use their best good faith efforts to attempt to agree on a valid provision which shall be a reasonable substitute for the invalid provision. The reasonableness of the substitute provision shall be considered in light of the purpose of the covenants and the reasonable protectible interests of the Corporation and Employee. The substitute provision shall be incorporated into this Agreement. *If the parties are unable to agree on a substitute provision, then the invalid or unreasonably broad provision shall be deemed deleted or modified to the minimum extent necessary to permit enforcement of all remaining provisions.*

Appellant's App. at 26 (emphasis added).

But, again, when we apply the blue pencil, we will not add terms that were not originally part of the agreement. *Burk*, 737 N.E.2d at 811. LEC asks that we replace the phrase "of every nature and kind" with the phrase "in competition with [LEC]'s business." Brief of Appellant at 23. Such a modification would require us to add a term that was not originally part of the agreement, which we will not do. *See Burk*, 737 N.E.2d at 811. We decline LEC's request to modify the parties' covenant not to compete. And we hold that the trial court did not err when it found that the covenant not to compete is unenforceable.[4]

---

sonable in light of testimony that "because of the nature of the practice of infectious disease medicine, it would be impossible to know whether Dr. Sleweon was, in fact, limiting himself to the practice of internal medicine." 652 N.E.2d at 524. There is no evidence that such would have been a problem in this case. Finally, in *Harris*, this court's analysis of the

covenant's prohibition against practicing "medicine or surgery" consists of three sentences. 450 N.E.2d at 85. And there is nothing in the analysis that persuades us to find the covenant in this case to be reasonable and necessary.

4. LEC also contends "that the reasonableness standard, and the burden on the employer to

## Issue Two: Non-solicitation Covenant

■ LEC next contends that the trial court erred when it did not enforce the parties' non-solicitation covenant. In particular, LEC maintains that even if the challenged provisions, namely paragraph 10.1(b) and (c), are overbroad, the court can blue-pencil them to make them enforceable. We must agree.

The parties' non-solicitation covenant reads:

> During the time Employee is employed by the Corporation, and for a two (2) year period after Employee's employment with the Corporation has been terminated (by either party and for whatever reason), Employee will not directly or indirectly:
>
> \*   \*   \*   \*   \*   \*
>
> (b) induce or attempt to persuade any former, current or future employee, agent, manager, consultant, director, or other participant in the Corporation's business to terminate such employment or other relationship in order to enter into any relationship with Employee, any business organization in which Employee is a participant in any capacity whatsoever, or any other business organization in competition with the Corporation's business;
>
> (c) induce or attempt to persuade any former, current or future patient of the Corporation, or of any physician affiliated with the Corporation, to cease being a patient of the Corporation or such physician or to become a patient of any other medical facility or business organization in which Employee is a participant in any capacity whatsoever, or of

any other business organization in competition with the Corporation's business;

Appellant's App. at 25.

In *Seach v. Richards, Dieterle & Co.*, 439 N.E.2d 208, 214 (Ind.Ct.App.1982), this court addressed a non-solicitation covenant prohibiting an employee's contact with all "present, past or prospective" customers of his former employer "no matter how much time has elapsed since their patronage ceased or the contact was made." We held that the restraint was "vague and too broad." *Id.* But, applying the blue-pencil doctrine, we struck the terms "past" and "prospective" from the covenant and held that it was valid, as modified, since it only prohibited contact with "present" customers. *Id.* at 215.

In this case, we likewise hold that the parties' non-solicitation covenant is overbroad. Like the former employee in *Seach*, Dr. Magnante is prohibited from soliciting "former, current or future" patients or employees for business or employment opportunities. We apply the blue-pencil doctrine to delete the terms "former" and "future" from paragraph 10.1(b) and (c), thus rendering those provisions enforceable. *See Burk*, 737 N.E.2d at 814. Thus, the trial court erred when it granted Dr. Magnante's summary judgment motion on the parties' non-solicitation covenant. On remand, we direct the trial court to enter summary judgment in favor of LEC as to the blue-pencil modifications of paragraph 10.1(b) and (c).

Affirmed in part, reversed in part, and remanded.

SULLIVAN, J., and RILEY, J., concur.

---

demonstrate reasonableness, should be much less stringent in situations where the parties, by agreement, provide that the employee can, at his option, have the restrictive covenants waived in their entirety." Brief of Appellant at 24. But, as LEC concedes, there is no case law to support this contention. And we are unpersuaded that such an exception to the established law on covenants not to compete should be created.

*ORDER*

On September 7, 2005, the Court handed down its opinion in this appeal marked Memorandum Decision, Not for Publication. The Appellee, by counsel, has filed a Motion to Publish Memorandum Decision. The Appellee states the Court's decision satisfies two criteria for publication under Appellate Rule 65:(1) it establishes, modifies or clarifies a rule of law; and (2) it involves a legal or factual issue of unique interest or substantial public importance. Therefore, the Appellee asks the Court to publish its September 7, 2005 decision.

Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. The Appellee's Motion to Publish Memorandum Decision is GRANTED, and this Court's opinion handed down on September 7, 2005 is now ORDERED PUBLISHED.

All Panel Judges concur.