Elizabeth MACGILL, Appellant–
Defendant,

v.

Tina REID, d/b/a Reid's Housekeeping,
Appellee–Plaintiff.

No. 49A02–0512–CV–1180.

Court of Appeals of Indiana.

July 18, 2006.

Goeffrey S. Lohman, Fillenwarth Dennerline Groth & Towe Indianapolis, IN, Attorney for Appellant.

Jeffrey L. Mastin, Indianapolis, IN, Attorney for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Elizabeth MacGill appeals the trial court's order denying her motion to correct error, which challenged the trial court's order denying MacGill's motion for summary judgment and granting Appellee–Plaintiff Tina Reid ("Reid") d/b/a Reid's Housekeeping's ("Reid's Housekeeping") cross motion for summary judgment. We reverse.

### Issue

MacGill raises one issue, which we restate as whether the trial court erred by concluding that the parties' covenant not to compete was enforceable.

### Facts and Procedural History

Reid owns and operates Reid's Housekeeping, which provides residential housekeeping services. Reid operates her business out of her house located in Marion County, Indiana. Reid provides services to housekeepers, who are independent contractors, by introducing or "match[ing]" them to her clients, who are homeowners that wish to have their residences cleaned. Appellant's App. at 59. Reid conducts all the client contact and handles the "scheduling, billing, collecting, and disbursing for [the housekeepers'] services." *Id.* at 6. Reid and the housekeepers share the fees generated by the cleaning services. Reid acquires clients through "marketing, mailings, advertising, and other activities." *Id.* at 6. Reid also obtains new clients through referrals.

In October 2003, MacGill entered into a written employment contract with Reid. The contract provided that MacGill would "perform all work for client and office management services, including but not limited to: confirming client appointments, scheduling associates, payroll, client correspondence, on site investigation when nec-

essary, handling complaints and questions from subcontractors and clients, follow-up with clients, answering phones etc[.]" *Id.* at 34 (emphasis omitted). The contract further provided that MacGill would be paid thirteen percent of Reid's gross weekly receipts. Paragraph eighteen of the contract contained a covenant not to compete, which provided that "[MacGill] agrees that for a period of two years after termination of this agreement for any reason that [MacGill] will not own, manage, or materially participate in any business substantially similar to [Reid's] business within a 25 mile radius of [Reid's] principal business address." *Id.* at 35.

MacGill ended her employment with Reid's Housekeeping in March 2005. At the time MacGill resigned, Reid had between five to ten housekeepers and 200 clients, who were "mostly located" within twenty-five miles of Reid's business address. *Id.* at 61. After her employment ended, MacGill distributed flyers and obtained one customer for whom she provided "housekeeping services[.]" *Id.* at 77.

In May 2005, Reid filed a complaint for damages and permanent injunction against MacGill to enforce the terms of the covenant not to compete. Thereafter, MacGill filed a motion for summary judgment and argued that the covenant not to compete was unenforceable because Reid had no legitimate protectible interest and the covenant's scope was unreasonably broad. Reid filed a cross motion for summary judgment and argued, in part, that Reid's Housekeeping had a legitimate interest in the goodwill with its clients and housekeeping associates, that the scope of the covenant was reasonable, and that MacGill had acquired a competitive advantage or

ability to harm Reid's business.[1] The trial court held a hearing on the motions and issued an order, which provides, in part: "The court finds that the covenant not to compete contained in the contract between the parties is valid and enforceable[.]" *Id.* at 78.[2] Thus, the trial court denied MacGill's summary judgment motion and granted Reid's cross motion for summary judgment.[3] MacGill then filed a motion to correct error, which the trial court denied. MacGill now appeals.

## Discussion and Decision

### I. Standard of Review

MacGill appeals the trial court's order denying her motion to correct error, which challenged the trial court's order denying MacGill's summary judgment motion and granting Reid's cross motion for summary judgment. Our standard of review for a trial court's grant of a motion for summary judgment is well settled. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(c); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Id.* Our review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. *Id.* at 974.

The fact that the parties made cross motions for summary judgment does not alter our standard of review. *Hartford Acc. & Indem. Co. v. Dana Corp.*, 690

---

1. Reid also argued that if the trial court found the covenant not to compete to be unenforceable, then MacGill would be unjustly enriched.

2. The trial court also dismissed Reid's unjust enrichment claim.

3. The trial court did not enter an injunction and did not award any damages.

N.E.2d 285, 291 (Ind.Ct.App.1997), *trans. denied.* When considering cross motions for summary judgment, we consider each motion separately, construing the facts most favorably to the non-moving party in each instance and determine whether the moving party is entitled to judgment as a matter of law. *Id.*

## II. Analysis

▮ MacGill contends that the trial court erred when it concluded that the parties' covenant not to compete is enforceable. In *Pathfinder Communications Corp. v. Macy,* 795 N.E.2d 1103, 1109 (Ind.Ct.App.2003), this court explained the relevant law regarding covenants not to compete as follows:

> Indiana courts have generally recognized and respected the freedom to contract. However, covenants not to compete are in restraint of trade and are not favored by the law. Noncompetition agreements are strictly construed against the employer and are enforced only if reasonable. Covenants must be reasonable with respect to the legitimate interests of the employer, restrictions on the employee, and the public interest. To determine the reasonableness of the covenant, we first consider whether the employer has asserted a legitimate interest that may be protected by a covenant. If the employer has asserted such an interest, we then determine whether the scope of the agreement is reasonable in terms of time, geography, and types of activity prohibited. The employer bears the burden of showing that the covenant is reasonable and necessary in light of the circumstances. In other words, the employer must demonstrate that the former employee has gained a unique competitive advantage or ability to harm the employer before such employer is entitled to the protection of a noncompetition covenant.

(Internal citations and quotations omitted). The ultimate determination of whether a noncompetition covenant is reasonable is a question of law. *Sharvelle v. Magnante,* 836 N.E.2d 432, 437 (Ind.Ct.App.2005) (citing *Raymundo v. Hammond Clinic Ass'n,* 449 N.E.2d 276, 280 (Ind.1983)). Because this issue is a pure question of law, it is particularly well-suited for disposition by summary judgment. *Id.*

### A. Legitimate Protectible Interest

▮ To demonstrate a legitimate protectible interest, "an employer must show some reason why it would be unfair to allow the employee to compete with the former employer." *Unger v. FFW Corp.,* 771 N.E.2d 1240, 1244 (Ind.Ct.App.2002) (citation omitted). MacGill contends that Reid had no protectible interest because MacGill only performed clerical and administrative duties. Reid contends that she had a legitimate protectible interest in Reid's Housekeeping's "good will and reputation Reid's enjoys with its clients and [housekeeping] associates[.]" Appellee's Br. at 5. We agree with Reid.

▮ "In Indiana, the law recognizes a protectible interest in the good will generated between a customer and a business." *Norlund v. Faust,* 675 N.E.2d 1142, 1154 (Ind.Ct.App.1997), *clarified on denial of reh'g,* 678 N.E.2d 421 (Ind.Ct.App.1997), *trans. denied. See also Seach v. Richards, Dieterle & Co.,* 439 N.E.2d 208, 213 (Ind. Ct.App.1982) ("It has long been settled that present customers are a protectable interest of an employer."). "As an incident to its business, an employer is entitled to contract to protect the good will of the business." *Unger,* 771 N.E.2d at 1244 (quoting *Cohoon v. Fin. Plans & Strategies, Inc.,* 760 N.E.2d 190, 195 (Ind.Ct. App.2001)). Elements of goodwill include secret or confidential information such as the names and addresses and requirements of customers and the advantage acquired through representative contact. *Id.*

These are property rights that an employer is entitled to protect. *Id.* "[I]n industries where personal contact between the employee and customer [is] especially important due to similarity in the product offered by competitors, the advantage acquired through the employee's representative contact with customers is part of the employer's good will, irrespective of whether or not the employee had access to confidential information." *Field v. Alexander & Alexander of Indiana, Inc.,* 503 N.E.2d 627, 633 (Ind.Ct.App.1987) (citations omitted), *reh'g denied, trans. denied.*

Here, the designated evidence shows that Reid obtained clients by marketing, mailings, advertising, and referrals and had approximately 200 clients. The designated evidence also reveals that MacGill had extensive contact with Reid's clients and housekeeping associates. MacGill was hired by Reid to "perform all work for client and office management services, including but not limited to: confirming client appointments, scheduling associates, payroll, client correspondence, on site investigation when necessary, handling complaints and questions from subcontractors and clients, follow-up with clients, answering phones etc[.]" Appellant's App. at 34 (emphasis omitted). MacGill was also in charge of "updating a client roster[.]" *Id.* at 32. In addition, MacGill's compensation for the performance of her job duties was thirteen percent of Reid's gross weekly receipts. Thus, MacGill's salary was directly related to the success of Reid's business.

Based upon the designated evidence, it is apparent that MacGill knew the names, addresses, and requirements of Reid's clients and housekeeping associates and had acquired an advantage through representative contact with these clients and housekeepers. Thus, Reid has demonstrated that Reid's Housekeeping has a legitimate interest, i.e., the good will with its current clients and housekeepers, worthy of protection by the covenant not to compete. *See, e.g., Licocci v. Cardinal Assocs. Inc.,* 445 N.E.2d 556, 561 (Ind. 1983) ("Indiana courts have held the advantageous familiarity and personal contact which employees derive from dealing with an employer's customers are elements of an employer's 'good will' and a protectible interest which may justify a restraint[.]"); *Sharvelle,* 836 N.E.2d at 437 ("The continued success of [a medical] practice, which is dependent upon patient referrals, is a legitimate interest worthy of protection."); *McGlothen v. Heritage Envtl. Servs., L.L.C.,* 705 N.E.2d 1069, 1073 (Ind.Ct.App.1999) (holding that the employer had a protectible interest in its good will where the employee had direct contact with its customers and much of the employer's business was repeat business).

### B. Scope of the Covenant

 A covenant not to compete must be sufficiently specific in scope to coincide with only the legitimate interests of the employer and to allow the employee a clear understanding of what conduct is prohibited. *Cohoon,* 760 N.E.2d at 195. The scope of a covenant not to compete must be reasonable in terms of time, geography, and types of activity prohibited. *Pathfinder,* 795 N.E.2d at 1109. MacGill does not challenge the time restriction but argues that the covenant is unreasonable because the activity restriction and the geographic restriction are broader than necessary to protect Reid's goodwill interests. We first address the scope of the types of activity restricted.

 "A non-competition agreement drafted so broadly as to prohibit seemingly harmless conduct is not reasonable in view of all of the circumstances of the particular case." *Seach,* 439 N.E.2d at 214 (internal quotations and citation omitted). "More specifically, a covenant restricting the employee from competing with portions of the

business with which he was never associated is invalid." *Id.* (internal quotations and citation omitted).

The parties' covenant not to compete provided that "[MacGill] agrees that for a period of two years after termination of this agreement for any reason that [MacGill] will not *own, manage, or materially participate in any business substantially similar to [Reid's] business* within a 25 mile radius of [Reid's] principal business address." Appellant's App. at 35 (emphasis added).

MacGill argues the covenant's provision prohibiting her from "managing or owning a housekeeping business, or even working in the housekeeping business altogether, was unnecessary to protect Reid's [goodwill] interest in preserving her customers and housekeepers." Appellant's Br. at 10. MacGill also contends that the covenant's term restricting her from "materially participat[ing] in any business substantially similar to [Reid's] business[,]" *see* Appellant's App. at 35, would prevent her working for another cleaning business in any capacity, such as working as a housekeeper, and is, therefore, overbroad.

Reid contends that "the covenant does not restrict [MacGill's] ability to immaterially participate in a housekeeping business" and that it is "MacGill's ability to use the unique model of housecleaning business operation and client development that Reid's seeks to protect." Appellee's Br. at 9–10.

Both parties cite to *Norlund* in support of their arguments. In *Norlund,* Dr. Faust, an ophthalmologist, hired Dr. Norlund, a respected and well-known optometrist, to obtain referrals from other area optometrists for secondary eye care. *Norlund,* 675 N.E.2d at 1146. Dr. Norlund's employment contract contained a covenant not to compete that prohibited him, for two years following the termination of his employment, from contacting any of the referring optometrists who had referred patients to Dr. Faust's practice while Dr. Norlund was employed with Dr. Faust and from acting as an optometric liaison or medical optometrist with any ophthalmologist in specified counties. *Id.* at 1147. Dr. Norlund relied upon his personal contacts with the other optometrists and built a successful network of referrals. *Id.* at 1146. After the parties were unable to agree during renegotiation of their contract, Dr. Norlund assisted his wife, also an optometrist, in setting up a facility similar to Dr. Faust's. *Id.* at 1147. Dr. Norlund informed one doctor that his wife's facility would consist of optometrists with whom he had developed relationships during his time with Dr. Faust. *Id.* at 1148. Also, Dr. Norlund contacted the area's optometrists and encouraged them to be independent of the local competing ophthalmologists. *Id.* Dr. Faust sought and received a preliminary injunction to enforce the covenant not to compete. *Id.* at 1145.

On appeal, we held that Dr. Faust had a protectible interest in the good will created by Dr. Norlund on Dr. Faust's behalf. *Id.* at 1155. When reviewing whether the scope of activity restricted was reasonable, we upheld the portion of the covenant prohibiting Dr. Norlund from contacting any of the specified optometrists because it was within the scope of Dr. Faust's protectible interest. *Id.* However, we concluded that the portion of the covenant prohibiting Dr. Norlund from acting as an optometric liaison or medical optometrist with any ophthalmologist in specified counties was overbroad because that provision was beyond the scope of Dr. Faust's protectible interest and did nothing more than "prevent [Dr.] Norlund from practicing his livelihood." *Id.* We noted that as long as Dr. Norlund did not contact any of the specified optometrists previously mentioned, then Dr. Faust had no protectible interest. *Id.* We reasoned that "[i]f there

is no protectable interest involved, an employer may not forbid an employee to subsequently work in his profession in such a large area." *Id.*

Similarly, we have found covenants not to compete that restrict an employee from working in any capacity for an employer's competitor or from working within portions of the business with which the employee was never associated to be unreasonable because such restrictions extend beyond the scope of the employer's legitimate interest. *See, e.g., Sharvelle*, 836 N.E.2d at 437–438 (holding that covenant's prohibition on the employee-doctor from practicing "health care of every nature and kind" was unreasonable where the doctor had been employed to practice in the specialty of ophthalmology); *Pathfinder*, 795 N.E.2d at 1114 (holding that covenant's provision that a radio disc jockey would "not engage in activities" at certain radio stations listed in the covenant was overbroad because it would have prevented the employee from being employed in any capacity by any radio station listed in the covenant and "extended far beyond" the former employer's legitimate interest in the employee as an on-air personality); *Burk v. Heritage Food Serv. Equip., Inc.*, 737 N.E.2d 803, 812 (Ind.Ct.App.2000) (holding that the covenant's clause prohibiting the employee from being "employed ... with any corporation ... which competes with, or otherwise engages in any business of the [employer]" was overbroad because it prohibited the employee from working for a competitor in any capacity); *Frederick v. Prof'l Bldg. Maint. Indus. Inc.*, 168 Ind.App. 647, 650, 344 N.E.2d 299, 302 (1976) (holding that a covenant

not to compete that restrained the employee, who worked at the management level of a cleaning and maintenance business and had gained the advantage of personal acquaintance with the employer's customers, from acting not only as a proprietor but also as an employee in furnishing janitorial services was unreasonable and beyond the scope of the employer's legitimate interest of protecting its good will). *But see Unger*, 771 N.E.2d at 1245 (holding that the noncompetition clause, which restricted the employee, who was the president of a company offering annuity and brokerage services, from "participating in any 'business competitive with the business of [his former employer,]' " who provided financial services, was reasonably limited in the type of activity it prohibited because the employee "was therefore free to seek employment with any business that did not provide financial services").

■ Because covenants not to compete are to be strictly construed against the employer, see *Pathfinder*, 795 N.E.2d at 1109, we agree with MacGill that the covenant's provision—restricting her from owning, managing, or materially participating in any business substantially similar to Reid's Housekeeping—would prevent her from being employed in any capacity by any other cleaning business and is unreasonable because it extends beyond the scope of Reid's Housekeeping's good will interest of protecting its current customers and housekeepers. Accordingly, the covenant not to compete is overbroad and unenforceable, and the trial court erred by concluding otherwise.[4]

Because we find the scope of the activity restricted to be overbroad, thus making

---

4. Reid's written employment contract contained a provision, which provided:

 If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. *If a*

*court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.*

the covenant not to compete unenforceable, we will not address the geographic restriction.

### C. Summary

Although Reid had a legitimate protectible interest in Reid Housekeeping's good will, the covenant was unreasonable in the type of activity restricted because it went beyond the scope of Reid's Housekeeping's good will interest of protecting its current customers and housekeepers. Therefore, we conclude that the trial court erred by concluding that the parties' covenant not to compete was enforceable. Accordingly, the trial court erred by denying MacGill's summary judgment motion and granting Reid's cross motion for summary judgment.

### Conclusion

For the foregoing reasons, we reverse the trial court's order denying MacGill's motion for summary judgment and granting Reid's cross motion for summary judgment.

Reversed.

KIRSCH, C.J., concurs.

CRONE, J., concurs in result.

Appellant's App. at 35 (emphasis added). Thus, the employment agreement encourages the use of the "blue pencil doctrine," which is the act of enforcing reasonable restrictions in a covenant not to compete by striking out unreasonable restrictions that are divisible. *See Dicen v. New Sesco, Inc.,* 839 N.E.2d 684, 687 (Ind.2005).

Neither party argues that we blue pencil the activity restriction, and we conclude that blue penciling the activity restriction would not render the covenant enforceable. *See Pathfinder,* 795 N.E.2d at 1109 (noting that covenants not to compete are in restraint of trade and are not favored by the law); *Norlund,* 675 N.E.2d at 1154 ("An employer may not sim- ply forbid his employee from subsequently operating a similar business. The employer must have an interest [that] he is trying to legitimately protect. There must be some reason why it would be unfair to allow the employee to compete with the former employer."). MacGill does, nevertheless, suggest that the restricted activity could be made reasonable if it would have prohibited her from soliciting Reid's customers and housekeepers for a period of time. However, when applying the blue pencil doctrine, a court may only strike unreasonable provisions from the covenant and cannot add terms that were not originally part of the agreement. *Burk,* 737 N.E.2d at 811.